PETER C. LAGARIAS (SBN 77091)
LAGARIAS LAW OFFICES
1629 Fifth Avenue
San Rafael, California 94901-1828
Telephone: (415) 460-0100
Facsimile: (415) 460-1099

Attorneys for Plaintiffs and Counter-Defendants
English & Sons, Inc., Cole English, Donna English,
Pizza Pierates, LLC, Formatts Enterprise, LLC,
Mehrok Food, Inc., Mostafa Sehhat, Olga Sehhat,
Straw Hat IP Holdings, LLC and Straw Hat
Cooperative Corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENGLISH & SONS, INC., a California Corporation, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> STRAW HAT RESTAURANTS, INC., a California Corporation; *et al.* <br><br> Defendants, <br><br> and RELATED COUNTER-CLAIMS. | CASE NO.   3-15-CV-01382-LB <br><br> **COUNTER-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE THIRD, SIXTH, EIGHTH, TENTH AND TWELFTH CAUSES OF ACTION OF COUNTER-DEFENDANTS' THIRD AMENDED AND SUPPLEMENTAL COUNTER-COMPLAINT** <br><br> (Fed. R. Civ. Pro. 12(b)(6)) <br><br> Date: June 18, 2015 <br> Time: 9:30 a.m. <br> Ctrm: C, 15th Floor (Hon. Laurel Beeler) |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. LEGAL ARGUMENT ............................................................................................................1

    A. The Law Of The Case Doctrine Does Not Prevent The Court From Considering The Motion To Dismiss ................................................................1

    B. The Third Cause of Action Does Not State a Claim for Breach of the Covenant Not to Compete in the Membership Agreements .....................................4

    C. The Sixth Cause of Action Does Not State A Claim For Trademark Infringement ..............................................................................................................5

    D. The Eighth Cause of Action Does Not State a Claim for False Designation of Origin ....................................................................................................................7

    E. The Tenth Cause of Action Does Not State A Claim For Trademark Dilution ......................................................................................................................8

    F. The Twelfth Cause of Action Does Not State a Claim For Unfair Competition ..............................................................................................................10

III. CONCLUSION ....................................................................................................................11

**TABLE OF AUTHORITIES**

**CASES**

*Accumulage Diagnostics Corp. v. Tecarecon, Inc.*,
  260 F.Supp.2d 941 (N.D. Cal. 2003) ....................................................................................... 10

*Algarin v. Maybelline, LLC*
  300 F.R.D. 444, 452 (S.D. Cal. 2014) ...................................................................................... 10

*AMF, Inc. v. Sleekcraft Boats*,
  559 F.2d 341 (9th Cir. 1979) ...................................................................................................... 6

*Applied Information Sciences Corp. v. eBAY, Inc.*,
  511 F.3d 966 (9th Cir. 2007) ...................................................................................................... 6

*Arizona v. California*
  460 U.S. 605 (1983) .................................................................................................................... 1

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .................................................................................................................... 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 11

*Berri v. Superior Court In and For City and County of San Francisco*
  43 Cal.2d 856 (1955) .................................................................................................................. 2

*Consumers Union of U.S., Inc. v. Alta–Dena Certified Dairy*
  4 Cal.App.4th 963 (1992) ......................................................................................................... 10

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*
  758 F.Supp.2d 1077, 1098 (S.D.Cal. 2010) ............................................................................... 3

*Informix Software, Inc. v. Oracle Corp*.
  927 F. Supp. 1283 (N.D. Cal. 1996) .......................................................................................... 9

*People v. Randazzo*
  48 Cal.2d 484 (1957) .................................................................................................................. 2

*Thomas v. Bible*
  983 F.2d 152 (9th Cir. 1993) ...................................................................................................... 3

*United States v. Alexander*
  106 F.3d 874 (9th Cir. 1997) .................................................................................................. 2, 3

**STATUTES**

15 U.S.C. § 1114(1)(a): ................................................................................................................... 5

15 U.S.C. § 1125(a)(1)(A) .............................................................................................................. 7

**FEDERAL RULES OF CIVIL PROCEDURE**

Rules 8 of the Federal Rules of Civil Procedure ................................................................................5

Rule 12(b)(6) of the Federal Rules of Civil Procedure ...................................................................5

Rule 12(h)(2) of the Federal Rules of Civil Procedure ...................................................................5

**REPLY OF COUNTER-DEFENDANTS IN SUPPORT OF MOTION TO DISMISS THE THIRD, SIXTH, EIGHTH, TENTH AND TWELFTH CAUSES OF ACTION OF COUNTER-COMPLAINANTS' THIRD AMENDED AND SUPPLEMENTAL COUNTER-COMPLAINT**

I.     **Introduction**

Counter-Complainants' Opposition fails to directly address the Motion's contentions, namely that the Third, Sixth, Eighth, Tenth and Twelfth Causes of Action of the Third Amended and Supplemental Counter-Complaint ("TACC") fail to state facts sufficient to state claims for relief. Despite filing an enormous volume of paper, and requesting judicial notice of the entire Contra Costa County Superior Court case file, Counter-Complainants do not direct the Court to factual allegations in the TACC which, if proved, would satisfy the elements of each of the challenged causes of action. Instead, the Opposition relies on unsupported conclusory statements and incorrectly raises the law of the case doctrine. Due to the lack of required factual allegations for the challenged Causes of Action, Counter-Defendants' Motion to Dismiss should be granted in its entirety.

II.     **Legal Argument**

A.     **The Law Of The Case Doctrine Does Not Prevent The Court From Considering The Motion To Dismiss**

Counter-Complainants' implicitly acknowledge the merits of the Motion to Dismiss by first attempting to avoid Court consideration of the motion. The Opposition incorrectly asserts that because Counter-Defendants had previously demurred to an earlier Cross-Complaint (in the California Superior Court prior to removal), the ruling on that demurrer is the law of the case. Counter-Complainants argue that therefore the Court should not consider this Motion to Dismiss some of the TACC's corresponding causes of action. This argument does not withstand scrutiny.

Counter-Complainants have cited no authority that a ruling on a demurrer is subject to the law of the case doctrine. None of the cases cited in their Opposition are demurrer cases. For example, *Arizona v. California*, 460 U.S. 605 (1983), involved a question of retained jurisdiction under a Supreme Court decree. Moreover, that discussion of the law of the case doctrine is *dicta*, since the court held that law of the case was not applicable. Counter-Complainants' initial quote

regarding a "fundamental precept of common law-adjudication," is inappropriate, as the quoted passage was discussing the preclusive effects of res judicata and collateral estoppel, not the law of the case doctrine. *Id.*, 460 U.S. at 619. *United States v. Alexander*, 106 F.3d 874 (9th Cir. 1997) is also not a demurrer case, instead the decision is a criminal case applying the law of the case doctrine to a ruling suppressing a confession. Multiple reasons exist, and are discussed below, as to why law of the case should not be applied to demurrer rulings.

In California Superior Courts, an order sustaining a demurrer is a non-appealable, interlocutory order, which the court can reconsider before final judgment "and come to a different conclusion." *Berri v. Superior Court,* 43 Cal.2d 856, 860 (1955), *see also*, *People v. Randazzo,* 48 Cal.2d 484 (1957). ("We believe, however, that an order of an appellate court recalling a remittitur and setting the appeal for further hearing is an interlocutory order that does not establish the law of the case for further proceedings therein. **In this respect it is analogous to an order of a trial court sustaining or overruling a demurrer to the complaint, which does not become binding on it**." *Id.,* 48 Cal.2d at 487, emphasis added). Because demurrer rulings may be reconsidered in state courts in California, there is no reason why other challenges to pleadings should not be considered in federal courts following removal.

Indeed, federal courts apply their own rules of civil procedure regarding pleadings, including Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure. Thus, Counter-Defendants, may file a Rule 12(b)(6) motion, including for judgment on the pleadings, at any time prior to and including trial on the merits. Rule 12(h)(2), Fed. R. Civ. Pro. Other federal courts have declined to follow the law of the case doctrine regarding renewed motions to dismiss, including regarding causes of actions which had survived a prior motion, following amended pleadings:

> When Plaintiffs filed the FACC, it superseded their previous complaint, and Sony was therefore free to move again for dismissal. See, *e.g., Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (HN34 "[A]fter amendment the original pleading no longer performs any function and is treated thereafter as non-

> existent."); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (" [A]n amended pleading supersedes the original."); *Stamas v. County of Madera*, No. CV F 09-0753 LJO SMS, 2010 U.S. Dist. LEXIS 3241, 2010 WL 289310, at *4 (E.D. Cal. 2010 Jan. 15, 2010) ("[A]n amended pleading is a new round of pleadings . . . and is subject to the same challenges as the original (i.e., motion to dismiss, to strike, for more definite statement).").
> Moreover, the law of the case doctrine is discretionary, and "is in no way a limit on a court's power to revisit, revise, or rescind an interlocutory order prior to entry of final judgment in the case. *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001) (internal quotation marks and citations omitted). Thus, the law of the case doctrine does not bar the Court from considering Sony's motion to dismiss Plaintiffs claim for breach of Express Warranty.
>
> *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.* (S.D.Cal. 2010) 758 F.Supp.2d 1077, 1098.)

Counter-Complainants have also cited no authority for their presumption that the law of the case doctrine applies to State court rulings on demurrers following removal of the action to federal court. As described by the Ninth Circuit, under the law of the case doctrine "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). This Court is neither the same court nor a lower court to the California Superior Court from which this matter was removed.

Finally, even if the law of the case doctrine were applicable to a state court demurrer ruling following removal, there are several exceptions under which courts "have discretion to depart from the law of the case," including where the evidence is different, or where "other changed circumstances exist." *United States v. Alexander, Supra*, 106 F.3d at 876. Here, the TACC differs significantly from the First Amended Cross-Complaint, ("FACC") to which the Counter-Defendants once demurred. Counter-Complainants' Opposition Exhibit 6 is asserted to be a redline comparison of the FACC and the TACC. An examination of Exhibit 6 reveals that not a single page, including the caption and the prayer for relief, remains the same; every page

contains underlining, indicating a change. Thirty six pages include both underlining and strike-throughs (deletions). The FACC contained 36 paragraphs of general allegations which are incorporated into every cause of action, while the TACC contains 67 paragraphs of general allegations which are incorporated into each cause of action, along with all other preceding paragraphs. More specifically, the causes of action in the TACC subject to this motion incorporate different numbers of paragraphs (thus factual allegations) than do the correlative causes of action in the FACC. The TACC's Third Cause of Action (breach of covenant not to compete) incorporates 53 fewer preceding paragraphs than does the FACC's Twentieth Cause of Action. The TACC's Sixth Cause of Action (trademark infringement) incorporates 54 more preceding paragraphs than does the FACC's Third Cause of Action. The TACC's Eighth Cause of Action (false designation of origin) incorporates 66 more preceding paragraphs than does the FACC's Fifth Cause of Action. The TACC's Tenth Cause of Action (trademark dilution) incorporates 66 more preceding paragraphs than does the FACC's Seventh Cause of Action. The TACC's Twelfth Cause of Action (unfair competition) incorporates 72 more preceding paragraphs than does the FACC's Ninth Cause of Action. Thus, the two Counter-Complaints, and in particular the subject causes of action, are sufficiently different that the Court would properly exercise its discretion under the law of the case, even if it were applicable herein, to entertain the Motion to Dismiss.

### B.   The Third Cause of Action Does Not State a Claim for Breach of the Covenant Not to Compete in the Membership Agreements

The basis of the Motion to Strike the Third Cause of Action is that the non-competition provision in the Counter-Defendants' Membership Agreements only prohibits one specific type of behavior: A member engaging in conduct "competitive with or similar to **a Straw Hat Pizza restaurant**." The Opposition agrees with this description of the Agreement (Opposition, p. 8: 20-24). And the TACC contains no allegations that the Counter-Defendants engaged in such conduct (i.e., sold pizza other than pursuant to their licenses from SHCC). Rather than attempt to deny or cure this defect, the Opposition asserts that Counter-Defendants breached the non-compete provision by "forming SHIPH and usurping 'Straw Hat proprietary information and intellectual

property…'" (Opposition, p. 8:8-13). The Opposition then conflates competing in the sale of pizza with "competing with SHCC and SHRI for the right to manage and control that intellectual property…." (*Id*., p. 9:1-5 and 14-17).

The text of the non-compete covenant cannot be reasonably construed to apply to transfer of the trademarks as though it were competition with a Straw Hat restaurant. The transfer of trademarks does not involve the sale of pizzas in competition with a Straw Hat restaurant. While Counter-Complainants challenge the transfer of the trademarks elsewhere as an unauthorized corporate transaction (the Fifteenth and Eighteenth Causes of Action of the TACC which Counter-Defendants plan to challenge subsequently via summary adjudication as involving factual issues), the transfer of the trademarks is not proscribed by the non-compete clause. The Opposition does not attempt to explain how the transfer is proscribed competition. Because Counter-Complainants have not identified factual allegations in the TACC of specific conduct by Counter-Defendants which is prohibited by the non-compete covenant, i.e., selling competing pizza, the Motion to Dismiss the Third Cause of Action should be granted.

### C. The Sixth Cause of Action Does Not State A Claim For Trademark Infringement

The Opposition to the Sixth Cause of Action demonstrates that Counter-Complainants' real objection is to Counter-Defendants "converting SHCC's assets and purportedly transferring them to SHIPH." (Opposition, p. 11:4-6, also p. 10:16-19) But this conduct, even if it existed, would not constitute trademark infringement. Namely, the TACC alleges trademark infringement without alleging all the elements of a claim. The Opposition neither identifies such allegations nor suggests that they could be added by amendment.

The Opposition to the Sixth Cause of Action asserts that two simplified elements are necessary to state an infringement claim under 15 U.S.C. § 1114(1)(a): 1. Ownership of a mark; and 2. Likelihood of confusion arising from Defendant's use of the mark. (Opposition, p. 10:12-13). Counter-Defendants however, oversimplify even these two elements by ignoring that "use of the mark" means "use in commerce," not use merely in the name of an entity. "Thus a trademark owner may seek redress if another's **use of the mark on different goods or services** is likely to

1  cause confusion with the owner's use of the mark in connection with its registered goods."
2  *Applied Information Sciences Corp. v. eBAY, Inc.*, 511 F.3d 966, 971 (9th Cir. 2007) (emphasis
3  added).

4        The TACC does not contain any allegations of use of the Straw Hat trademarks in
5  commerce, except at Counter-Defendants' restaurants pursuant to their licenses from SHCC.[1]
6  The TACC does not allege that the Straw Hat IP Holdings name has been attached to any goods
7  or services or otherwise used in commerce. The TACC paragraphs referred to in this section of
8  the Opposition (¶¶ 1, 17, 23, 35, 39, 40 and 52) do not allege any commercial activity by SHIPH
9  or the other Counter-Defendants which could cause consumer confusion. Consumer confusion, of
10 course, is the ill for which Section 1114 of the Lanham Act provides a remedy, as the Opposition
11 itself points out.  (Opposition, p. 10:5-11).

12       The Opposition's discussion of the factors from *AMF, Inc. v. Sleekcraft Boats*, 559 F.2d
13 341 (9th Cir. 1979) further establishes that this cause of action cannot be saved: "That is, the
14 TACC alleges that the parties are using the same or nearly identical marks, to sell the same goods,
15 using the same marketing materials as part of the 'Straw Hat System.'" (Opposition, p. 11:21-23).
16 In other words, Counter-Defendants are selling Straw Hat pizza at their licensed Straw Hat
17 restaurants. No other "use," much less an infringing use, is alleged in the TACC or suggested in
18 the Opposition. But the TACC admits that Counter-Defendants were authorized as Coop
19 members to use the Straw Hat trademarks at their restaurants. See, TACC, Paragraph 40.

20       The Opposition also selectively quotes from the System License Agreement (Ex. 2 to
21 Marinez Declaration) to convey the impression that SHRI has standing to bring an action under
22 Section 1114.  Not so. When the License Agreement's grant is examined, the language establishes
23 that SHRI does not have standing to pursue this claim. The License Agreement states that:

> A. LICENSOR [SHCC] hereby grants to LICENSEE [SHRI], for the Term of this Agreement as recited in Schedule A attached hereto, the exclusive right and license; **except as provided in Schedule A**, to use, sell, distribute, franchise and advertise the System and all Licensed Products (derived therefrom) in the

---
[1] *See* Counter-Defendants' Motion to Dismiss, p. 15:1-8.

>   Territory.

Lic. Agt., Ex. 2, Decl. of Marinez, p. 1, (emphasis added).

Schedule A to the License Agreement in turn provides that:

> Within the United States, the Territory shall be exclusive, except that LICENSOR [SHCC] shall be entitled to maintain its existing restaurants, identified in Schedule B, operated as Cooperative stores by Cooperative members and no franchise units or area development rights shall be granted within the protected territories granted to each Cooperative store, which territories consist of a three (3) mile radius around or specific geographic description around each store…."

Lic. Agt., Ex. 2, Decl. of Marinez, Schedule A, ¶ 2.

Thus, the License Agreement does not grant SHRI control over SHCC's members or their restaurants.

As quoted in the Opposition, the License Agreement's grant of a right to prosecute infringement claims to SHRI is limited to claims "for infringement of the rights licensed in this Agreement." Lic. Agt., Ex. 2, Decl. of Marinez, ¶ 14; Opposition, p. 12:14-16. The rights licensed in the Agreement do not include controlling Counter-Defendants' uses of the trademarks in their restaurants. The TACC does not allege any use of the trademarks in commerce other than at Counter-Defendants' licensed restaurants. SHRI therefore does not have standing to bring this infringement claim against Counter-Defendants.

### D. The Eighth Cause of Action Does Not State a Claim for False Designation of Origin

A claim for false designation of origin must allege use in commerce of a "word, term, name, symbol, or device" which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). The Opposition again seeks to disconnect the likelihood of confusion from its necessary predicate *use in commerce*, and then argues likelihood of confusion

1  without identifying the use in commerce.

2      The TACC does not allege any use in commerce of any words, except of the trademarks at
3  Counter-Defendants' licensed Straw Hat restaurants.[2] The Opposition does not identify a
4  paragraph in the pleading where such an additional allegation exists. Moreover, the TACC does
5  not allege to whom, in what circumstances, or in connection with which goods or services,
6  Counter-Defendants have "misrepresented that they own and control the Marks." (TACC, p. 27:1-
7  2). The TACC does not allege (and the Opposition does not suggest) who would be confused "as
8  to the origin, sponsorship, or approval of" goods or services, even if the goods or services were
9  identified. The simple, conclusory assertion of a likelihood of confusion, without providing any
10 factual basis, does not satisfy the federal pleading standards necessary to overcome a motion to
11 dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

12     The Opposition has neither identified where in the TACC all the elements of a claim for
13 false designation of origin are alleged, nor suggested that the omissions could be cured by
14 amendment. The Eighth Cause of Action should also be dismissed.

15     **E.**    **The Tenth Cause of Action Does Not State A Claim For Trademark Dilution**

16     Counter-Complainants' opposition to the Motion to Dismiss the Tenth Cause of Action
17 does not to direct the Court to any allegations in the TACC describing Counter-Defendants' use
18 of anything in commerce in a manner that impairs the distinctiveness of the Straw Hat
19 trademarks. Instead, Counter-Complainants assert that Counter-Defendants' use of the
20 trademarks at their Straw Hat restaurants dilutes the marks' value, because due to various alleged
21 breaches of their Membership Agreements, Counter-Defendants "are no longer entitled to use the
22 Marks in operating their restaurants." (Opposition, p. 14:4-6). This argument has two
23 fundamental flaws: Counter-Complainants have not alleged in the TACC that Counter-
24 Defendants are not entitled to use the marks in their restaurants, indeed at Paragraph 40 the
25 TACC alleges just the opposite. And, by the terms of their Membership Agreements, the Counter-
26 Defendants have not lost their rights to use the trademarks at their restaurants.

27 [2] The Ninth Cause of Action separately asserts a claim for false designation of origin against the Englishes for use of the trademarks at an allegedly unlicensed restaurant.

28

When ruling on a motion to dismiss, the court may disregard factual allegations which are contradicted by facts established in documents attached to the pleading. *Informix Software, Inc. v. Oracle Corp.*, 927 F. Supp. 1283, 1285 (N.D. Cal. 1996). Here, the Membership Agreement (attached to the TACC as Exhibit B) contradicts the assertion that the Counter-Defendants are not entitled to use the marks at their restaurants. The Membership Agreement states that:

> As a Member, You have a license to use Our registered service marks… to identify the Restaurant. You may also use Our other registered marks, marks for which We have applied for registration, and other trademarks/service marks We may approve under the rules described in the then-current Operating Manual, which may change from time to time.

TACC, Ex. B, p. 6.

The Membership agreement provides that former member's "Duties Upon Termination" include "Stop using Our Marks."[3] This is the Membership Agreement's only provision requiring discontinuing use of the marks. The Membership Agreement provides only two ways for members to become former members, by expiration/non-renewal of their Membership Agreement (TACC Ex. B., pp. 3-4) or by termination, either voluntarily or for cause.

The Membership Agreement provides that a membership can be terminated for cause for specified reasons listed in TACC Exhibit B between pages 14 and 16. The Agreement provides two procedures for terminating a membership for cause. For certain incurable defaults: 'We can terminate Your Membership immediately **by giving You written notice**…."[4] For the other, curable defaults, the procedure is slightly different:

> If We have grounds to terminate You (other than those listed in the previous Section), **We will send You written notice of termination**, and tell You what You need to do to correct the problem. You will have thirty (30) days to carry out the correction…. If the correction We describe is not carried out in thirty (30) days…. Your will automatically become effective **without further written notice** from Us.[5]

---

[3] TACC Ex. B., pp. 16-17.

[4] TACC Ex. B., p. 14 (emphasis added).

[5] TACC Ex. B., p. 16 [emphasis added].

9

1  A prerequisite for all with cause terminations is giving notice of termination to the member. A
2  member can request termination prior to expiration of the term for hardship, at the Board's
3  discretion. A member can also give SHCC written notice 120 days before expiration of the term,
4  and prevent the Agreement from automatically renewing. (TACC Ex. B., p. 14 and 3-4).

5  The TACC does not allege that any of Counter-Defendants were given notices of
6  termination by SHCC, or that any of the Counter-Defendants' Membership Agreements expired
7  or were voluntarily not renewed. The Opposition does not assert that such facts could be alleged
8  and request permission to amend the Counter-Complaint to add those allegations. Because the
9  Membership Agreements do not provide that members in default automatically lose their right to
10 use the trademarks or to operate their Straw Hat restaurants, The TACC's allegations that
11 Counter-Defendants are in default of their Membership Agreements do not support the inference
12 that they have lost their rights to use the trademarks at their Straw Hat restaurants. Since that is
13 the basis of Counter-Complainants' opposition to the motion to dismiss the Tenth Cause of
14 Action, the motion should be granted.

15 **F.     The Twelfth Cause of Action Does Not State a Claim For Unfair Competition**

16 "The primary purpose of the unfair competition law ... is to protect the public from
17 unscrupulous business practices." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 452 (S.D. Cal.
18 2014) (quoting *Consumers Union of U.S., Inc. v. Alta–Dena Certified Dairy* (1992) 4 Cal.App.4th
19 963, 975). Breach of contract is not a grounds for violation of the unfair competition law.
20 *Accumulage Diagnostics Corp. v. Tecarecon, Inc.,* 260 F.Supp.2d 941, 954 (N.D. Cal. 2003). The
21 Twelfth Cause of Action should be dismissed because Counter-Complainants have not alleged
22 that Counter-Defendants' conduct is injurious to the public. As the Opposition consistently makes
23 clear, the Counter-Complainants object to Counter-Defendants' assertions of control over SHCC
24 and ownership of the Straw Hat trademarks, rather than to their actual use of the trademarks.
25 Consequently, most of the TACC's causes of action are attempts to find a legal theory under
26 which Counter-Defendants could be liable for that assertion of control. Unfair competition is not
27 that theory. The TACC fails to allege facts constituting a claim for any of the three unfair
28

1 competition types.

2 In the Opposition, Counter-Complainants do not identify factual, as opposed to conclusory, allegations in the TACC supporting the Twelfth Cause of Action. The single paragraph in the TACC identified in the Opposition, Paragraph 130, is a boilerplate damage allegation, not an allegation of specific facts which would support a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Nor have Counter-Complainants cited case law holding that a disagreement over ownership of intellectual property amounts to a violation of the Unfair Competition Law. Instead Counter-Complainants quote cases defining the types of unfair competition, but fail to identify allegations in the TACC which state a claim satisfying any of the definitions. Counter-Complainants again refer to the likelihood of confusion without identifying allegations in the TACC as to who is likely to be confused, or what commercial actions Counter-Defendants have taken which are likely to mislead consumers.

### III. **Conclusion**

In the TACC Counter-Complainants have failed to allege the required elements of each of the challenged causes of action. In their Opposition to this Motion they have not directed the Court to allegations in the TACC which state plausible claims. Neither have they given any indication that they could make such allegations if granted leave to amend.

///

///

///

The initial Complaint in this matter was filed over three years ago. The FACC was filed over two years ago. Despite years of litigation and discovery, the Third Amended Counter-Complaint was drafted without concrete factual allegations sufficient to state causes of action for breach of the covenant against competition, trademark infringement, false designation of origin, trademark dilution and unfair competition. Counter-Complainants have not "developed" sufficient facts through years of discovery; clearly these failures cannot be cured.  Plaintiffs and Counter-Defendants request that their Motion to Dismiss the Third, Sixth, Eighth, Tenth and Twelfth Causes of Action of the Third Amended and Supplemental Counter-Complaint be granted dismissing those claims with prejudice.

DATED:  June 1, 2015                              LAGARIAS LAW OFFICES


By:   /s/ Peter C. Lagarias
      Peter C. Lagarias, Esq.
Attorneys for Plaintiffs and Counter-Defendants English & Sons, Inc., Cole English, Donna English, Pizza Pierates, LLC, Formatts Enterprise, LLC, Mehrok Food, Inc., Mostafa Sehhat, Olga Sehhat, Straw Hat IP Holdings, LLC and Straw Hat Cooperative Corporation

n:\active\straw hat co-op\pleadings - federal court - northern district\reply mot dismiss.06.01.15.doc