1  TODD A. ROBERTS (SBN 129722)
   ENRIQUE MARINEZ (SBN 160956)
2  NICOLE S. HEALY (SBN 157417)
   ROPERS, MAJESKI, KOHN & BENTLEY
3  1001 Marshall Street, Suite 500
   Redwood City, CA  94063-2052
4  Telephone:    (650) 364-8200
   Facsimile:    (650) 780-1701
5  Email:    todd.roberts@rmkb.com
             enrique.marinez@rmkb.com
6             nicole.healy@rmkb.com

7  Attorneys for Defendant/Counter-Claimant
   STRAW HAT RESTAURANTS, INC.,
8  Counter-Claimant STRAW HAT
   COOPERATIVE CORPORATION, and
9  Defendants JEFFREY EASON, SAL LISTEK,
   DEBORAH MORRIS, CLARK RUPP,
10 RANDY WISE, AND ALLEN STREGE

11              UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13 ENGLISH & SONS, INC., a California     | **CASE NO. 3:15-cv-01382-LB**
   corporation; et al.,                  |
14                                        | **DEFENDANT/COUNTER-CLAIMANT**
                Plaintiffs,               | **STRAW HAT RESTAURANTS, INC.,**
15                                        | **COUNTER-CLAIMANT STRAW HAT**
        v.                               | **COOPERATIVE CORPORATION'S**
16                                        | **MOTION FOR PARTIAL SUMMARY**
   STRAW HAT RESTAURANTS, INC., a        | **JUDGMENT AS TO COUNTS 1, 6, 8, 10, 18,**
17 California corporation; et al.,        | **19 AND 23 OF THE THIRD AMENDED AND**
                                          | **SUPPLEMENTAL COUNTER-COMPLAINT**
18              Defendants.               | **FOR EQUITABLE RELIEF AND DAMAGES;**
                                          | **MEMORANDUM OF POINTS AND**
19                                        | **AUTHORITIES**

20                                        | Hearing Date:   March 10, 2016
                                          | Time:           9:30 a.m.
21                                        | Courtroom:      C
                                          | Magistrate Judge:    Hon. Laurel Beeler
22

23 AND RELATED COUNTER-CLAIM.            | Removal filed:  March 25, 2015
                                          | Trial Date: May 16, 2016
24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

4847-3484-1132.5

SHCC & SHRI'S MOT. PARTIAL FOR SUMM.
JUDGMENT TO COUNTS 1, 6, 8, 10, 18, 19 & 23;
MEMO. OF PTS. & AUTHS. - 3:15-CV-01382-LB

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ....................................................................................................2

II.  BACKGROUND ......................................................................................................4

    A.   The Parties ........................................................................................................4

    B.   As a Cooperative, SHCC's Growth Was Limited, So SHRI Was Developed to Grow the Straw Hat Business to Benefit SHCC's Members...........................5

    C.   Following Extensive Discussion, the Majority of SHCC's Members Voted to Wind-up and Dissolve the Company on June 15, 2011 .....................................6

    D.   In June 2012, Plaintiffs Transferred SHCC's Intellectual Property to SHIPH for No Consideration ...............................................................................8

    E.   Cole English Authorized the Filing of the Third Amended Complaint While He Was a Member of SHRI's Board of Directors ....................................10

    F.   SHCC and SHRI's Counterclaim .....................................................................10

III. ARGUMENT ...........................................................................................................11

    A.   Legal Standard for Granting Summary Judgment ............................................11

    B.   Cole English Breached His Fiduciary Duties to SHRI and its Shareholders .......11

    C.   SHCC and SHRI are Entitled to Declaratory Judgments that They Continue to Own and Control SHCC's Assets ................................................................13

        1.   A Court May Issue a Declaratory Judgment to Resolve the Parties' Legal Rights and Duties When An Actual Case or Controversy Exists...........................................................................................................13

        2.   Counterclaimants Seek a Declaratory Judgment that the June 15, 2011 Ballot Satisfied California's Requirements for Corporate Dissolution, and that SHCC Should Be Dissolved Pursuant to the Majority's Vote ................................................................................................14

        3.   SHCC's Members as of June 15, 2011 Did Not Abandon Their Rights to SHCC and its Assets by Becoming Franchisees Following the Vote ...............................................................................................................15

        4.   Plaintiffs Did Not Own SHCC's Assets When they Supposedly Transferred Them to SHIPH ........................................................................16

    D.   Plaintiffs Wrongfully Converted SHCC's Assets and Intellectual Property Including Its Trademarks .....................................................................................17

    E.   Plaintiffs Have Violated Counterclaimants' Trademark Rights .........................19

        1.   Lanham Act Violations .............................................................................19

        2.   Plaintiffs Have Infringed Counterclaimants' Rights in its Marks ............20

        3.   Plaintiffs Have Directly and Contributorily Infringed the Marks.............21

        4.   Plaintiffs are Liable for False Designation of Origin ...............................22

        5.   Plaintiffs are Liable for Trademark Dilution ............................................22

        6.   Counterclaimants are Entitled to Recover Lanham Act Damages ............23

IV.  CONCLUSION.........................................................................................................24

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

4847-3484-1132.5

- i -

SHCC & SHRI'S MOT. PARTIAL FOR SUMM.
JUDGMENT TO COUNTS 1, 6, 8, 10, 18, 19 & 23;
MEMO. OF PTS. & AUTHS. - 3:15-CV-01382-LB

# TABLE OF AUTHORITIES

Page

CASES

*AMF, Inc. v. Sleekcraft Boats,*
   599 F.2d 341 (9th Cir.1979) ........................................................................21

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) .....................................................................................11

*Avery Dennison Corp. v. Sumpton,*
   189 F.3d 868, 875 (9th Cir. 1999) ...............................................................23

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) .....................................................................................11

*Century 21 Real Estate Corp. v. Sandlin,*
   846 F.2d 1175, 1177 (9th Cir. 1988) ...........................................................20

*Hokto Kinoko Co. v. Concord Farms, Inc.,*
   738 F.3d 1085, 1096 (9th Cir. 2013) ...........................................................21

*Int'l Order of Job's Daughters v. Lindeburg & Co.,*
   633 F.2d 912, 917 (9th Cir.1980) ................................................................22

*Jada Toys, Inc. v. Mattel, Inc.,*
   518 F.3d 628, 632-33 (9th Cir. 2007) ..........................................................21

*New West Corp. v. NYM Co. of California Inc.,*
   595 F.2d 1194, 1201 (9th Cir.1979) .............................................................22

*Panavision Intern., L.P. v. Toeppen,*
   141 F.3d 1316, 1327 (9th Cir. 1998) ...........................................................23

*ProtectMarriage.com v. Courage Campaign,*
   680 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010) .............................................20

STATUTES

15 U.S.C. § 1125(a)(1)(A) ..................................................................................22

15 U.S.C. § 1127 .................................................................................................23

OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ...........................................................................................11

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 10, 2016, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom C, 15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable Laurel Beeler presiding, Counterclaimants will and hereby do move for an Order granting Defendant and Counterclaimant Straw Hat Restaurants, Inc. ("SHRI") and Counterclaimant Straw Hat Cooperative Corporation's (SHCC, and together with SHRI, "Counterclaimants") Motion for Partial Summary Judgment as to Counts 1, 6, 8, 10, 18, 19 and 23 of the Third Amended and Supplemental Counter-Complaint for Equitable Relief and Damages ("Motion for Partial Summary Judgment-Counterclaims").

Specifically, Counterclaimants ask this Court to grant judgment in their favor as to the foregoing claims on the basis that Plaintiff/Counter-defendant Cole English breached his fiduciary duty to SHRI; that the June 15, 2011 vote by the majority of SHCC's members to wind up and dissolve SHCC, and to transfer its intellectual property including its trademarks ("Marks") to SHRI, met California law and the dissolution should be carried out by the board then in place; that SHCC owns and controls its Marks and other intellectual property which was licensed to SHRI in perpetuity; that Plaintiffs have violated SHCC's and SHRI's trademark rights; and that Plaintiffs converted SHCC's assets including its intellectual property.

Counterclaimants' Motion for Partial Summary Judgment is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations, and Exhibits filed concurrently herewith, all matters of which the Court may take judicial notice, and such other arguments and evidence as may be presented before or at the hearing on the Motion.

## STATEMENT OF THE ISSUES TO BE DECIDED

1.  Whether Cole English violated his fiduciary duty to SHRI by causing Plaintiff's Third Amended Complaint ("TAC") to be filed against the company and the individual defendants while he was a member of SHRI's Board of Directors.

2.  Whether because the June 15, 2011 vote by the majority of SHCC's members in favor of dissolution met the requirements for dissolving SHCC pursuant to Cal. Corp. Code §

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   12630 and SHCC's Bylaws, the board in place at the time of that vote has the power to,

2   and must, carry out the dissolution proceedings.

3   3.   Whether SHCC, including its members as of June 15, 2011, and SHRI own, control, and

4      have the right to use and license the Straw Hat trademarks ("Marks") and other Straw Hat

5      intellectual property assets.

6   4.   Whether by forming Plaintiff Straw Hat IP Holding, LLC ("SHIPH") and purportedly

7      transferring the Marks belonging or licensed to SHCC and SHRI to SHIPH for no

8      consideration and thereafter using the Marks, Plaintiffs are liable for direct or contributory

9      infringement in violation of 15 U.S.C. § 1114(l)(a)?

10   5.   Whether by falsely claiming and misrepresenting that SHIPH owns and controls the

11      Marks and registering its purported ownership with the U.S. Patent and Trademark Office

12      ("USPTO"), Plaintiffs directly and contributorily violated 15 U.S.C. § 1125(a)(1)(A), and

13      caused confusion, mistake, or deception as to the affiliation, connection, or association of

14      their use of the Marks?

15   6.   Whether Plaintiffs' actions including its claim of right to ownership and use of the Marks,

16      to the exclusion of SHRI and the majority of SHCC members who voted to dissolve

17      SHCC,  has caused and is likely to cause confusion or mistake; or has deceived, misled,

18      betrayed, or defrauded consumers, or is likely to do so; or has diluted and will continue to

19      dilute the Marks; or is likely to impair the distinctiveness, strength, and value of the

20      Marks, and injure the business reputation of SHCC and SHRI and their Marks.

21   7.   Whether Plaintiffs unlawfully converted SHCC's assets, including the Marks by

22      purportedly transferring and assigning them to SHIPH without consideration, and

23      registering them with the USPTO, while knowing that the Marks belong to SHCC and

24      were perpetually and exclusively licensed to SHRI.

25   **MEMORANDUM OF POINTS AND AUTHORITIES**

26   **I.**   **INTRODUCTION**

27      Rather than accept that on June 15, 2011, the majority of SHCC's members approved a

28   proposal to dissolve SHCC and transfer its assets, including the Marks, to SHRI and to convert

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    their restaurants to franchises on favorable terms, Plaintiffs and Counter-Defendants English &

2    Sons, Inc., Cole English, Donna English (collectively, "English"); Formatts Enterprise, LLC

3    ("Formatts"); Mehrok Foods, Inc. ("Mehrok"); Mostafa Sehhat and Olga Sehhat ("Sehhat"); and

4    Pizza Pierates, LLC ("Pizza Pierates," collectively, "Plaintiffs") have attempted to disenfranchise

5    their fellow members and wrongfully seize SHCC's assets for themselves, to the exclusion of the

6    others.  Having voted *against* the ballot proposal, Plaintiffs first sued and contested the legitimacy

7    of the vote, and later announced they were the only remaining members of SHCC.

8        Plaintiffs' spurious claim to be the sole members of SHCC is based on a single provision

9    of SHCC's Bylaws and would require this court to ignore the majority vote.  Plaintiffs only seized

10   on that argument ***after*** filing their initial Complaint.  *See* ECF No. 1-1.  The initial complaint,

11   filed on October 19, 2011, alleged that the June 15, 2011 vote was improper and sought to enjoin

12   the dissolution of SHCC, or alternatively, if the Superior Court did not enjoin the dissolution or

13   declare it void, Plaintiffs asked the court to supervise the dissolution, and disburse SHCC's assets

14   to "Plaintiffs and other legitimate remaining members of SHCC."  *Id*. ¶ 51.

15       Now, however, Plaintiffs contend that by converting their restaurants to SHRI franchises

16   following the vote, all of SHCC's members, except Plaintiffs, abandoned and forfeited their

17   interest in SHCC and its asset.  Based on their false claim of ownership, Plaintiffs supposedly

18   transferred the Marks to SHIPH, and registered the claimed "assignment" with the USPTO.

19   Moreover, Plaintiffs purported to terminate the exclusive, perpetual license to the Marks and the

20   other intellectual property which SHCC granted to SHRI.

21       Plaintiffs are not free to subvert the rights of the majority and ignore the vote simply

22   because they do not like the outcome.  They had choice of becoming franchisees, cashing out

23   their interest in SHCC, or operating their restaurants until their terms ran out.  Seizing control of

24   SHCC's Marks was not one of the options offered.  Counterclaimants therefore seek a declaratory

25   judgment that the June 15, 2011 vote by the majority of SHCC's members to wind up and

26   dissolve SHCC, and to transfer the Marks to SHRI, satisfied California law and that the

27   dissolution should be carried out by the board then in place.  Further Counterclaimants seek a

28   declaratory judgment that SHCC owns and controls its Marks and other intellectual property

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

which were exclusively licensed to SHRI in perpetuity.

Moreover, Plaintiffs have infringed SHCC's trademarks and converted its assets, including by supposedly transferring the Marks to SHIPH and then registering its claimed ownership of them with the USPTO.

Finally, Cole English breached his fiduciary duty to SHRI and its shareholders by causing SHIPH, of which he was a managing member, to sue Defendants, including SHRI, for trademark infringement while he was a member of SHRI's Board of Directors.[1]

## II.   BACKGROUND

### A.   The Parties

SHCC was formed in 1987 as a cooperative corporation, owned and operated by its members. *See* Decalration of Allen Strege ("Strege Dec.") ¶ 5.  SHRI was formed in 2006 as a California corporation. *Id*. ¶ 6.

Except for Plaintiff SHIPH, the Englishes,[2] Formatts, Mehrok, Sehhat, and Pizza Pierates, are or were members of SHCC who owned and operated one or more Straw Hat Pizza restaurants. *See* Strege Dec. ¶ 7 and Exhibits 1-6 thereto (Plaintiffs' membership agreements).

SHCC and SHRI were managed by Boards of Directors, which at times included Defendants Wise, Listek, Morris, Rupp, and Eason, each of whom also own or owned one or more Straw Hat Pizza restaurants directly or through their respective business entities.[3]  Eason closed his Straw Hat Pizza restaurant on December 23, 2011.  Rupp closed his Straw Hat Pizza restaurant on December 12, 2011.  *See* Strege Dec. ¶ 22.

Strege was an employee of SHCC and SHRI and has never been a member of SHCC. Strege Dec. ¶ 2.  Former Defendant Jonathan Fornaci ("Fornaci") was president of SHRI and SHCC from 2007 until December 2011.  Declaration of Nicole S. Healy ("Healy Dec.") Ex. 42

---

[1] Cole English should be responsible for damages, at least, in the amount of SHRI's attorney's fees from the date of the breach.

[2] Cole English and Donna English own and control English & Sons, Inc.  *See* Healy Dec. Ex. 39 (Cole English Tr.) at 17:2-17.

[3] Rupp filed a petition for Chapter 7 bankruptcy protection on March 12, 2012, and was discharged on June 12, 2012.  *See In re William C. Rupp and Susan L. Rupp*, Case No. 4:12bk42210 (Bankr. N.D. Cal. 2012).  ECF No. 17.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

(Wise Tr.) at 13:6-12.

### B. As a Cooperative, SHCC's Growth Was Limited, So SHRI Was Developed to Grow the Straw Hat Business to Benefit SHCC's Members

As a member-owned, non-profit cooperative, SHCC's growth potential was limited. Its revenues primarily derived from member assessments (which were frequently late or unpaid)[4] and to a lesser degree, rebates from members' purchases from certain vendors. *See* Strege Dec. ¶ 5. To grow the business, the Boards of the two companies took steps to expand SHRI's role and reduce SHCC's. To that end, in 2008, SHRI began offering Straw Hat franchises. *Id.* ¶ 6.

In mid-2008, SHCC's Board of Directors presented to the Company's members a motion to amend the Bylaws. The motion and the ballot were supplied to members as of June 1, 2008. *See* Strege Dec., Exs. 7-8 thereto (Motion and Ballots). Each of the Plaintiffs who were then eligible voting members of SHCC, that is Donna English, Skip Sehhat, and Gurmeet Mehrok, voted in favor of the motion. *See* Strege Dec., Ex. 8. The motion passed on July 13, 2008 without dissent. Strege Dec. ¶ 8.

Among other things, the motion provided that "SHCC perpetually licenses to SHRI the use of Straw Hat logo, trademarks, intellectual property, systems, training, technology, artwork, advertisement, marketing, processes and procedures." Strege Dec., Ex. 7 (Motion) ¶ 8. The Amended and Restated Bylaws that were the subject of the motion also provide that SHCC would license its intellectual property to SHRI. *See* Strege Dec., Ex. 9 (Amended Bylaws) Art. VI, § 6.d. In return, SHRI would provide services to SHCC. *See id.*, Art. VI, § 6.c.

On behalf of SHCC and SHRI, Fornaci executed a "System License Agreement," effective October 27, 2008. Pursuant to that agreement, SHCC perpetually licensed its intellectual property to SHRI for $4,166 per month, and SHRI agreed to provide SHCC with "all services needed to operate which includes but is not limited to Accounting, Operations, Administrative, Marketing, Field Sales and Operational support along with Executive Management" for $60,311 per month. *See* Strege Dec., Ex. 10 (System License Agreement).

---

[4] The Englishes were often in arrears, as was Pizza Pierates. Healy Dec. Ex. 39 (C. English Tr.) at 51:17-22, 116:7-10, 122:22-123:1, 193:5-8; and Ex. 41 (Harrison Tr.) at 11:5-8, 11:12-14:14.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Among other things, the perpetual exclusive license expressly granted SHRI the right to prosecute violations. *See id*. ¶¶ 1.A, 14.A.

### C. Following Extensive Discussion, the Majority of SHCC's Members Voted to Wind-up and Dissolve the Company on June 15, 2011

On January 27, 2011, Jonathan Fornaci emailed Defendants Wise, Listek, Morris, and Eason, and non-defendant SHCC directors Arthur ("Sonny") Mitchell, Pamela Anderson, and Gagan Singh. The email referred to a discussion at a recent SHCC board meeting in Pismo Beach, and proposed winding down SHCC and issuing a ballot to: "Vote to close SHCC down;" and "Transfer intellectual property to SHRI which SHRI already has via a perpetual license;" and provide the members with certain financial benefits for converting their restaurants to SHRI franchises. Declaration of Randal Wise ("Wise Dec."), Ex. 31.

On February 8, 2011, Fornaci met with the SHCC Board of Directors, then composed of Defendants Rupp, Eason, Morris, and Listek, and non-defendants Arthur ("Sonny") Mitchell, Pamela Anderson, and Gagan Singh, and discussed closing down SHCC and carrying on the Straw Hat business through SHRI. *See* Wise Dec., Ex. 32 (Board minutes). By May 1, 2011, SHCC's Board presented to the members a proposal to wind up and dissolve SHCC, transfer its assets to SHRI, and give the members the option of receiving a distribution or operating their restaurants as SHRI franchises. The proposal was outlined in a ballot issued first on May 1, 2011, and then re-issued on June 3, 2011, following discussions and revision.

The members discussed the proposal by email, and extensively questioned the Board and Fornaci, both in emails and in live meetings. *See* Wise Dec. Ex. 33 (email chain). The Board members also discussed the question at length among themselves. *See* Wise Dec. ¶ 12.

On June 15, 2011, the majority of SHCC's members, including Defendants and Plaintiff Pizza Pierates, voted to wind up and dissolve SHCC. *See* Strege Dec., Exs. 11-18 (Defendants' ballots and Pizza Pierates's ballot). The remaining Plaintiffs voted against the dissolution. *See* Strege Dec., Exs. 19-24 (ballots). The motion carried, with 23 out of the 42 memberships voting in favor of dissolving SHCC and transferring its assets to SHRI. *See* Strege Dec., Ex. 25 (tally sheets); Wise Dec. Ex. 35 (email announcing the results).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- 6 -

The written ballot provided that the following would occur on dissolution.  SHCC would transfer "all intellectual property rights of SHCC including ownership of all trademarks, copyrights and trade secrets to [SHRI] in exchange for payment of debt or for fair value."  *See* Strege Ex. 19 ¶1.A.  Members had the option of *either* "[r]eceiving the distributions the member would be entitled to receive upon the dissolution of SHCC under the Bylaws and California law" *or* "[a]ssigning the member's membership in SHCC to SHRI and offering those members who choose to assign their membership to SHRI and who choose to enter into a franchise agreement with SHRI" certain financial benefits.  *See id*. ¶1.B.  Members who became franchisees would receive a fixed 1.75% royalty and advertising fee which would transfer with the business if it were sold; other favorable financial terms; and 7,500 shares of SHRI stock.  *See id*. ¶1.B.ii.

Although the 2011 ballot offered only two options to members — either cash out or join SHRI as a franchisee — Fornaci offered a third option.  Members who did not want to become franchisees could choose to operate their restaurants under their SHCC membership agreement until the term of their agreement expired.  *See* Wise Dec. Ex. 33 (email chain) at ENG0000011, n.11.  No one took him up on that offer.  Instead, when SHCC's members voted on June 15, 2011, the majority elected to dissolve the corporation, transfer its assets to SHRI, and either cash out or become SHRI franchisees.  *See* Strege Dec. Ex. 25 (tally sheets); Wise Dec. Ex. 35 (email announcing the results); Wise Dec. Ex. 38 (SHRI's Response to Plaintiffs' RFA No. 2, & Ex. A).

Before becoming franchisees, SHCC member took steps to assure themselves that the trademarks would be transferred to SHRI.  None of them would have become SHRI franchisees if they had known that Plaintiffs would seek to hijack the trademarks.  *See* Declarations of Nemat Dadrass ¶¶ 9-11; Arthur Mitchell ¶¶ 7-10; Raj Nayyar ¶¶ 8-10; and Jim Pitzer at ¶¶ 9-11.

Plaintiffs objected to the dissolution and filed suit in Contra Costa County Superior Court against SHCC, SHRI, Fornaci, Eason, Morris, Listek, Rupp, and Wise, on October 19, 2011.  ECF No. 1-1.  At that time, Plaintiffs did not take the position that they were the only members of SHCC.  Rather they sued the defendants including SHCC seeking an order to enjoin the implementation of the vote to dissolve the company, and alternatively, if the Superior Court rejected that request, asked it to disburse SHCC's assets to "Plaintiffs and other legitimate

- 7 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    remaining members of SHCC." *Id*. ¶ 51.

2    ### D.  In June 2012, Plaintiffs Transferred SHCC's Intellectual Property to SHIPH for
3    No Consideration

4    Like all SHCC members, Plaintiffs were granted a limited license to use the Straw Hat

5    Marks, recipes, service marks, and other intellectual property.  *See* Healy Dec. Ex. 39 (C. English

6    Tr.) at 126:10-127:25; Strege Dec. Ex. 1, § V.E.  The Membership Agreement warned that the

7    Marks belonged to SHCC, and informed members of the various limitations on their use of the

8    Marks.  By signing the membership agreement, the SHCC members acknowledged that SHCC

9    had the "Exclusive right to own, control, and license the use of Our Marks."  *Id*. § VI. D.1.

10   Further, the member agreed that "You will not contest, or help anyone else contest, Our

11   ownership of them."  *Id*.  Members were also informed that "You have no individual right to them,

12   or to any goodwill associated with them, now or in the future."  Members were also prohibited

13   from "us[ing] the words 'Straw Hat' in a corporate or partnership name."  Despite that, Plaintiffs

14   formed SHIPH with the words "Straw Hat" as part of its name.  *See* Healy Dec. Ex. 40 (SHIPH

15   Tr.) at 14:5-16.  SHCC also warned that it would "never be liable to You for any claimed loss to

16   the Restaurant or to You because of infringement or claims of infringement."  *See* Healy Dec.

17   Ex. 39 (C. English Tr.) at 126:10-127:25; Strege Dec. Ex. 1 (Membership Agreement) § VI.D.3.

18   In 2012, Plaintiffs began contending that they were the sole members of SHCC, and

19   purportedly elected themselves its directors in a meeting held on May 17, 2012.  *See* Strege Dec.

20   Ex. 26.  Plaintiffs base their clams on one clause in the SHCC Bylaws that provided that if a

21   member converted their co-op restaurant to a franchise they would lose their SHCC membership.

22   *See* Strege Dec. Ex. 9 (Bylaws) at Art. VII, § 3.

23   Claiming to represent SHCC, by letter dated May 24, 2012, Plaintiffs' counsel, Michael

24   Grace, purported to terminate SHRI's perpetual license to SHCC's intellectual property, including

25   the Marks.  *See* Healy Dec., Ex. 39 (C. English Tr.) at 177:16-178:14 and Ex. 69 thereto (May 24,

26   2012 letter from Michael Grace).  The letter questioned whether any license existed, and at the

27   same time, contended that it was being terminated for "fraud in the inducement, lack of

28   consideration, and also for material breach by SHRI," without supplying any support for those

1     contentions.  *See id.*

2          On June 7, 2012, the individual plaintiffs and/or their principals, Cole English, Donna

3     English, Randy Matthews (Formatts), Nick Harrison (Pizza Pierates), Olga Sehhat, and Gary

4     Mehrok (Mehrok Foods), formed SHIPH for the purpose of holding SHCC's intellectual property.

5     *See* Healy Dec. Ex. 39 (C. English Tr.) at 62:16-63:4; Healy Dec. Ex. 40 (SHIPH Tr.) at 14:2-4,

6     14:17-16:4; 16:19-18:16, and Ex. 86 thereto (SHIPH Articles of Organization).

7          On June 8, 2012, Plaintiffs (except SHIPH) purportedly voted to wind up and dissolve

8     SHCC and to "distribute the net assets of SHCC to its Members on a 'per store' basis.  That same

9     day, each of the Plaintiffs (except SHIPH) executed an "Intellectual Property Assignment"

10    supposedly transferring their *pro rata* share of SHCC's intellectual property to SHIPH.  *See, e.g.*,

11    Healy Dec. Ex. 40 (SHIPH Tr.) at 44:5-46:22 and Ex. 91 thereto; SHIPH Tr. at 56:21-59:12 and

12    Exs. 93-96 thereto ("assignments")**;** SHIPH Tr. at 61:10-62:22; and Healy Dec. Ex. 42.

13         SHIPH did not supply any consideration for SHCC's intellectual property.  *See* Healy Dec.

14    Ex. 40 (SHIPH Tr.) at 37:15-19.  Nor did the Plaintiffs pay or make any provision for the

15    payment of SHCC's debts before purportedly transferring its assets to SHIPH or filing a

16    "Domestic Nonprofit Corporation Certificate of Election to Wind Up and Dissolve" with the

17    California Secretary of State's Office on June 8, 2012.  *See* Healy Dec. Ex. 40 (SHIPH Tr.) at

18    42:8-43:3, and Ex. 90 thereto.

19         SHCC's Bylaws provide that "In the event of the dissolution of the Corporation, the

20    Members of record at the time a certificate evidencing the Corporation's election to dissolve is

21    filed, . . . shall receive the assets of the Corporation remaining after . . . (b) payment, or adequate

22    provision for payment of all taxes, penalties, debts and liabilities; . . ."  *Id*. at 41:23-42:4, 81:24-

23    83:4; Strege Dec. Ex. 9 (Bylaws) Art. II, § 1(b).   Although he lacked any factual basis for his

24    belief, Cole English testified that he simply did not believe that SHCC owed approximately

25    $300,000 to SHRI at the time of the dissolution vote.  *See* Healy Dec. Ex. 39 (C. English Tr.) at

26    276:8-278:5; Healy Dec. Ex. 40 (SHIPH Tr.) at 35:9-36:1, 71:5-74:23, and Ex. 98 thereto (SHRI

27    2010 & 2011 Audited Financial Statements).

28         On June 20, 2012, Cole English and Nick Harrison executed a "Notice of Assignment of

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

SHCC & SHRI'S MOT. PARTIAL SUMM.
JUDGMENT TO COUNTS 1, 6, 8, 10, 18, 19 & 23;
MEMO. OF PTS. & AUTHS. - 3:15-CV-01382-LB

1   Trademarks." Healy Dec. Ex. 40 (SHIPH Tr.) at 39:12-40:8 ad Ex. 89 thereto. Thereafter, on

2   June 25, 2012, without any prior notice to SHCC, SHRI or Defendants, Plaintiffs' counsel,

3   Michael Grace, filed a notice of assignment with the USPTO that purported to assign SHCC's

4   trademarks to SHIPH. *See* Healy Dec. Ex. 40 (SHIPH Tr.) at 49:10-52:13 and Ex. 92 thereto.

5   **E.   Cole English Authorized the Filing of the Third Amended Complaint While He**
       **Was a Member of SHRI's Board of Directors**

6

7   On August 8, 2014, Cole English was elected to SHRI's Board of Directors. He resigned

8   on July 22, 2015. *See* Wise Dec. Exs. 36-37 (SHRI Board Minutes dated August 6, 2014 and

9   July 22, 2015); Healy Dec. Ex. 44 (C. English Response to RFA Set, No. 2) at Responses 7, 8.

10  On February 23, 2015, Plaintiffs filed the Third Amended Complaint for Damages and

11  Equitable Relief ("TAC"), in the Contra Costa County Superior Court. ECF No. 1-14. While he

12  was a director of SHRI, and in both his personal capacity and as a managing member of SHIPH,

13  Cole English authorized his counsel to file the TAC. *See* Healy Dec. Ex. 39 (C. English Tr.) at

14  93:21-95:1; Healy Dec. Ex. 40 (SHIPH Tr.) at 23:15-24:7, 25:1-5. Cole English understood that

15  he had fiduciary duties to SHRI while he was a director. Healy Dec. Ex. 39 (C. English Tr.) at

16  95:2-7. He initially testified that it was beneficial to SHRI to be sued, but then somewhat

17  reconsidered his testimony. *Id*. at 95:8-18.

18  The TAC asserts seven claims, including, for the first time, a claim by SHIPH for

19  trademark infringement against all Defendants. TAC, Count 7.[5] ECF No. 1-14. SHIPH alleges

20  that it owns the Straw Hat Marks and that Defendants infringed. *See id*. ¶¶ 93-97. SHIPH asserts

21  an infringement claim against Eason and Rupp, who have not been SHRI franchisees since

22  December 2011. *See* Strege Dec. ¶ 22. SHIPH also names Strege, who, as SHRI's president,

23  reported to the Board, including Cole English. *See id*. ¶ 19.

24  **F.   SHCC and SHRI's Counterclaim**

25  Shortly after removing this action from the Contra Costa County Superior Court to this

26  Court, SHCC and SHRI sought and obtained permission to file their Third Amended and

27  ───────────────

28  [5] This lawsuit was removed from the Contra Costa Superior Court on March 25, 2015, after
    nearly four years of litigation. *See* ECF No. 1.

- 10 -                    SHCC & SHRI'S MOT. PARTIAL SUMM.
                                                                                                JUDGMENT TO COUNTS 1, 6, 8, 10, 18, 19 & 23;
                                                                                                MEMO. OF PTS. & AUTHS. - 3:15-CV-01382-LB

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   Supplemental Counter-Complaint for Equitable Relief and Damages ("TACC").  ECF Nos. 8, 13,

2   15.  The TACC pleads 23 claims.  Plaintiffs filed a motion to dismiss certain claims; the Court's

3   Order on that motion dismissed the third count.  ECF Nos. 17, 28.

4   　　Counterclaimants are moving for partial summary judgment as to seven of the claims

5   asserted in the TACC.  Specifically, the motion seeks summary judgment as to Count 1 as to Cole

6   English (breach of fiduciary duty); the remaining claims are brought against all Plaintiffs; Count

7   6 (trademark infringement); Count 8 (false designation of origin, false or misleading advertising);

8   Count 10 (trademark dilution); Count 18 (declaratory relief that the June 15, 2011 vote met

9   dissolution requirements and the board then in place must carry out the dissolution; subsequent

10  certificate of election null and void); Count 19 (declaratory relief– intellectual property

11  ownership); and Count 23 (conversion).

12  **III.   ARGUMENT**

13  　　**A.   Legal Standard for Granting Summary Judgment**

14  　　Summary judgment is appropriate where the "movant shows that there is no genuine

15  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

16  Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The "mere existence of

17  some alleged factual dispute between the parties will not defeat an otherwise properly supported

18  motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact*."

19  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).  "Only

20  disputes over facts that might affect the outcome of the suit under the governing law will properly

21  preclude the entry of summary judgment." *Id*. at 248.  If no such factual disputes exist, and the

22  movant has established its claim or defense, the court should enter judgment for the moving party.

23  　　**B.   Cole English Breached His Fiduciary Duties to SHRI and its Shareholders**

24  　　Corporate directors owe fiduciary duties to the company, including the duties of care,

25  loyalty, and good faith. *See Professional Hockey Corp. v. World Hockey Assn.*, 143 Cal. App. 3d

26  410, 414 (1983) (referring to the "duties of obedience, diligence and loyalty.").

27  　　To prove a claim for breach of fiduciary duty, the proponent must demonstrate the "(1)

28  existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- 11 -

SHCC & SHRI'S MOT. PARTIAL SUMM.
JUDGMENT TO COUNTS 1, 6, 8, 10, 18, 19 & 23;
MEMO. OF PTS. & AUTHS. - 3:15-CV-01382-LB

by the breach." *ViChip Corp v. Lee*, 438 F. Supp. 2d 1087 (N.D. Cal. 2006) (citation omitted);

*Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (1991).  Similarly, to prove a breach of the duty of

loyalty, the proponent must demonstrate "(1) the existence of a relationship giving rise to a duty

of loyalty; (2) one or more breaches of that duty; and (3) damage proximately caused by that

breach." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007); *Hanger Prosthetics &*

*Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122 (C.D. Cal. 2008).

     Under California law a director must perform his duties "in good faith, in a manner such

director believes to be in the best interest of the corporation and its shareholders and with such

care, including reasonable inquiry, as an ordinarily prudent person in a like position would use

under similar circumstances."  Cal. Corp. Code § 309(a).  "Directors owe a duty of highest good

faith to the corporation and its stockholders." *Remillard Brick Co. v. Remillard-Dandini Co.*, 109

Cal. App. 2d 405, 419 (1952).  Likewise, the duty of loyalty requires the directors . . . not to act in

their own self-interest when the interest of their corporation will be damaged thereby."

*Professional Hockey*, 143 Cal. App. 3d at 414.

     Cole English has acknowledged having fiduciary duties to SHRI, and yet he authorized

the filing of a complaint against the company, while he was a member of the Board of Directors.

> Q.  Did you have an understanding that you owed fiduciary duties to SHRI?
> A.  Yes.
> Q.  Did you have an understanding that you had a duty of loyalty to SHRI?
> A.  Yes.
> Q.  Okay. Did you believe that it was in SHRI's best interest that you file a lawsuit, or authorize the filing of a lawsuit, against them?
> A.  Yes.
> Q.  Okay. So you think it was in the best interest of SHRI to be named a Defendant in a lawsuit that it would have to defend against —from English & Sons and the other Plaintiffs?
> A.  Yes.
> Q.  How is that beneficial to SHRI?
> A.  Probably not.

Healy Dec. Ex. 39 (C. English Tr.) at 95:2-18; *see also* Healy Dec. Ex. 44 (C. English Response

to RFA Set, No. 2) at Responses 7-9.

     What could be more disloyal than a director subjecting his own company to the costs and

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  burdens of litigation for his personal benefit?  In particular, although the lawsuit pre-dated his

2  membership on the Board, Cole English exposed SHRI to significant additional liability where he

3  authorized the filing of the trademark infringement claim against all Defendants on behalf of

4  SHIPH, of which he was a managing member.  *See* Healy Dec. Ex. 40 (SHIPH Tr.) at 23:15-24:7,

5  25:1-5.

6       Cole English's actions in suing SHRI for trademark infringement are particularly galling

7  given that, as a member of its Board of Directors, he was one of the people charged with

8  managing the company.[6]  *See* Cal. Corp. Code § 300(a) ("the business and affairs of the

9  corporation shall be managed and all corporate powers shall be exercised by or under the

10 direction of the board.").  SHRI's management, including its then president, Allen Strege,

11 reported to and took direction from the Board.  Essentially, Cole English has sued Strege for acts

12 and decisions with respect to SHRI's operations for which English was responsible.  Likewise,

13 English has sued his fellow directors and SHRI shareholders, Listek and Wise, and franchisee and

14 shareholder Morris, as well as former directors Eason and Rupp (*see* Strege Dec. ¶ 22), for

15 infringing trademarks that English, in his role as a director, authorized SHRI to use.[7]  *See id.* ¶ 19.

16    **C.   SHCC and SHRI are Entitled to Declaratory Judgments that They Continue
             to Own and Control SHCC's Assets**

17

18       **1.  A Court May Issue a Declaratory Judgment to Resolve the Parties' Legal
                Rights and Duties When An Actual Case or Controversy Exists**

19       A court may issue a declaratory judgment, where under the facts alleged, "there is a

20 substantial controversy, between parties having adverse legal interests, of sufficient immediacy

21 and reality to warrant the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pac. Coal*

22 *& Oil Co.*, 312 U.S. 270, 273, (1941); 22 U.S.C. §§ 2201(a).

23       California law is substantially similar.  *See* Cal. Code. Civ. Proc. § 1060 ("Any person . . .

24 who desires a declaration of his or her rights or duties with respect to another, or in respect to, in,

25 ――――――――――――――――

26 [6] As an SHRI director, Cole English approved the transfer of a Straw Hat Pizza restaurant in
    Salinas to a new owner.  The transfer necessarily required and permitted the new owner to use the
    Marks and other Straw Hat intellectual property.  *See* Wise Dec. ¶ 18; Strege Dec. Ex. 28, ¶ 6.

27 [7] The TAC harmed SHRI in other ways.  A prospective franchisee did not apply for a franchise
    due in part to the pendency of this lawsuit.  *See* Strege Dec. ¶ 20, and Exs. 27-28.

28

*(Left margin, vertical text:)* Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  over or upon property, . . . , may, in cases of actual controversy relating to the legal rights and

2  duties of the respective parties, bring an original action or cross-complaint in the superior court

3  for a declaration of his or her rights and duties  . . .”); *see also Maguire v. Hibernia S. & L. Soc.*,

4  23 Cal. 2d 719, 729 (1944) (“The purpose of a declaratory judgment is to 'serve some practical

5  end in quieting or stabilizing an uncertain or disputed jural relation.'”) (citation omitted).

> **2.  Counterclaimants Seek a Declaratory Judgment that the June 15, 2011
> Ballot Satisfied California's Requirements for Corporate Dissolution, and
> that SHCC Should Be Dissolved Pursuant to the Majority's Vote**

8        In Count 18, SHCC and SHRI seek a declaratory judgment that the June 15, 2011 ballot

9  met the requirements for dissolving SHCC under California law, and that SHCC should therefore

10  be dissolved by the Board then in place, consistent with the terms of the ballot approved by the

11  majority of SHCC members.  *See* Counter-Complaint ¶¶ 49-53, 155-61, ECF No. 15.

12        Members of a cooperative corporation may voluntarily elect to wind up and dissolve, “by

13  approval of a majority of all members or (2) by approval of the board and approval of the

14  members.”  Cal. Corp. Code § 12630(a).  Likewise, SHCC's Bylaws provide that “[e]ach

15  Membership shall have the right to vote as set forth in section 2 of this Article II for the election

16  of directors and on disposition of substantially all the assets of the corporation and on the merger

17  or dissolution of the corporation.”  *See* Strege Dec. Ex. 9 (Bylaws), Art. II, § 1.

18        The June 15, 2011 vote met all the requirements of Corporations Code § 12630(a) and the

19  Bylaws:[8] the company sent out ballots to the shareholders that “set forth the proposed action;”

20  “provide[d] an opportunity to specify approval or disapproval of any proposal;” and “provide[d] a

21  reasonable time within which to return the ballot to the corporation.”  *See id*. Art. II, § 15.

22  Further, the ballots specified the number of votes needed for approval.  *See id*.; *see also* Exs. 11-

23  24.  Out of a total of 42 memberships, where 22 favorable votes were needed to pass, 23 members

24  voted in favor of dissolution, 15 voted against, and the rest abstained, resulting in a majority vote

25  in favor of the ballot measure.  *See* Strege Dec. Ex. 25; Wise Dec. Ex. 35.  Plaintiffs have never

26  offered any evidence to refute the regularity of the vote, and the ballot tally.

27  ───────────────
[8] Section 15 of the Bylaws sets out the provisions for an action by written ballot without a
28  meeting.  Strege Dec. Ex. 9 (Bylaws), Art. II, § 15.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Because the dissolution vote was conducted in accordance with California law and

2    SHCC's Bylaws, SHRI and SHCC are entitled to a declaratory judgment that the vote met those

3    requirements, and that the Board then in place must carry out the dissolution.  Moreover,

4    Counterclaimants are entitled to a judgment that Plaintiffs' subsequent supposed certificate of

5    election to wind up and dissolve SHCC is null, void, and without any force or effect.

### 3. SHCC's Members as of June 15, 2011 Did Not Abandon Their Rights to SHCC and its Assets by Becoming Franchisees Following the Vote

8    Counterclaimants are also entitled to a judgment that SHCC owns and controls the Marks,

9    and that SHRI has a perpetual license to use SHCC's Marks and intellectual property, and further

10   that the members of SHCC as of June 15, 2011 did not abandon their rights to the company and

11   its assets by becoming SHRI franchisees following the dissolution vote.

12   Plaintiffs would have this Court believe that once the SHCC members began to complete

13   the wind up and dissolution process contemplated in the June 15, 2011 ballot measure, which was

14   never finalized, the members abandoned their memberships and their interest in SHCC's assets,

15   leaving Plaintiffs as the sole remaining members of SHCC.  As the Declarations of Nemat

16   Dadrass, Paul Judge, Arthur Mitchell, Raj Nayyar, and Jim Pitzer show, they never intended to

17   abandon their rights and interests in SHCC's assets, and particularly its trademarks, by converting

18   their restaurants to franchises.  SHCC's member became franchisees because that was one of the

19   steps that the majority had approved on the path to finalizing the dissolution and winding up of

20   the company.  None of them would have become SHRI franchisees if they had known that

21   Plaintiffs would seek to hijack the trademarks.  For Plaintiffs to simply disregard the will of the

22   majority and attempt to seize control of SHCC and its assets makes a mockery of corporate

23   democracy.  *See, e.g.*, Healy Dec. Ex. 39 (C. English Tr.) at 233:16-25.

24   Plaintiffs base their theory on a single provision in SHCC's bylaws, specifically Article

25   VII, § 3 which provides that a "Member may sell, transfer or convert a restaurant into a Franchise.

26   If the Member chooses to convert the store into a Franchise, then such action will cause that

27   Member to lose that share of the Corporation associated with that restaurant."  Plaintiffs cannot

28   point to any evidence indicating that when that provision was drafted (three years before the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

SHCC & SHRI'S MOT. PARTIAL SUMM.
JUDGMENT TO COUNTS 1, 6, 8, 10, 18, 19 & 23;
MEMO. OF PTS. & AUTHS. - 3:15-CV-01382-LB

1   dissolution vote) the members understood and believed that it would apply to a situation where all

2   but six restaurants were converted to franchises.  Nor can Plaintiffs show that the members

3   understood, intended, and believed that by carrying out the terms of the ballot, the members

4   understood that they would forfeit their interests in SHCC.

5       Plaintiffs take that provision out of context.  Like a contract, bylaws must be read in their

6   entirety.  "It is generally accepted that corporate bylaws are to be construed according to the

7   general rules governing the construction of statutes and contracts."  *See Andrews Farms v. Calcot,*

8   *Ltd.*, 258 F.R.D. 640, 648 (2009) (*quoting Sanchez v. Grain Growers Ass'n of California*, 126 Cal.

9   App. 3d 665, 672 (1981)); *see also Singh v. Singh*, 114 Cal. App. 4th 1264, 1294 (2004).  "A

10  written contract must be read as a whole and every part interpreted with reference to the whole."

11  *Shakey's Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir. 1983).  Further, "[p]reference must be given

12  to reasonable interpretations as opposed to those that are unreasonable, or that would make the

13  contract illusory."  *Id.*; *see also E.H. Morrill Co. v. State*, 65 Cal.2d 787, 792 (1967).

14      While the provision at issue clearly addresses the circumstance in which a single

15  restaurant owner decided to convert to a franchise, it was drafted years before the majority of

16  members voted to wind up and dissolve SHCC.  Section 3 of Article VII ("Operational Matters")

17  simply does not address what happens to SHCC's assets and the members' interest in them

18  following a decision by the majority to wind up and dissolve the company.  As discussed below,

19  an entirely separate provision located in Article II, "Membership," addresses dissolution and the

20  subsequent disposition of the company's assets.  Strege Dec. Ex. 9 (Bylaws), Art. II, § 1.  In their

21  initial complaint, Plaintiffs demonstrated that they believe the same to be true.

### 4.   Plaintiffs Did Not Own SHCC's Assets When they Supposedly Transferred Them to SHIPH

24      Plaintiffs neither individually owned nor controlled SHCC's assets as of June 8, 2012,

25  when they purportedly transferred them to SHIPH. *See* Section II.D, *supra*.  Even if they had

26  been the sole remaining members of SHCC — which Defendants dispute — Plaintiffs did not

27  own its assets. "An individual shareholder, by virtue of his ownership of shares, does not own the

28  corporation's assets . . ." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Plaintiffs did not comply with California law or the Bylaws in supposedly obtaining SHCC's intellectual property or transferring it to SHIPH.  California law provides that, upon the payment or provision for known debts and liabilities, the corporation may distribute its assets to members pursuant to its bylaws or "in accordance with their respective rights therein."  *See* Cal. Corp. Code §§ 12653(a), 12656.  SHCC's Bylaws provide that "[i]n the event of the dissolution of the Corporation, the Members of record at the time a certificate evidencing the Corporation's election to dissolve is filed, . . . *shall receive the assets of the Corporation remaining after . . . ; (b) payment, or adequate provision for payment of all taxes, penalties, debts and liabilities*; . . ." Strege Dec. Ex 9 (Bylaws) Art. II, § 1(b) (emphasis added).

While Plaintiffs have claimed to be the sole remaining members of SHCC after the June 15, 2011 vote and the transition of other members to franchisees pursuant to the terms of the ballot, Plaintiffs have also admitted not paying or making provision for SHCC's debts before the purported assignment of its assets to SHIPH.  *See* Healy Dec. Ex. 39 (C. English Tr.) at 276:8-278:5; Healy Dec. Ex. 40 (SHIPH Tr.) at 35:9-36:1, 71:5-74:23, and Ex. 98 thereto.  Thus, even if they had been the sole members of SHCC, which they were not, Plaintiffs never received a *pro rata* distribution of SHCC's assets because they never paid its debts.  SHCC therefore continues to own and control its assets, including the Marks.  Moreover, because Plaintiffs never owned nor controlled the Marks, their purported "termination" of the license granted to SHRI has no effect.

**D.     Plaintiffs Wrongfully Converted SHCC's Assets and Intellectual Property Including Its Trademarks**

In Count 23, Counterclaimants assert a claim against Plaintiffs for conversion of SHCC's assets.  To prove conversion, a "plaintiff must establish: (1) his ownership of or right to possess the property in question at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages." *Swingless Golf Club Corp. v. Taylor*, 732 F. Supp. 2d 899, 910 (N.D. Cal. 2010) (*citing Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 544 (1996)); *see also Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003).

///

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

The property converted need not be tangible.  The "misappropriation and sale of . . . intangible property of another without authority from the owner is conversion." *A & M Records, Inc. v. Heilman*, 75 Cal. App. 3d 554, 570 (1977) (sale of copies of musical recordings; plaintiff owned the masters); *Kremen*, 337 F.3d at 1029-36 (conversion of domain name); *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc.,* 958 F.2d 896 (9th Cir. 1992) (pirated FAA certification); *Hanger Prosthetics*, 556 F. Supp. 2d at 1137 (misappropriation of patient lists).

As discussed above, the majority of SHCC's members voted to wind down the company and transfer its assets, including its intellectual property, to SHRI.  Plaintiffs thereafter converted the other members' interests in SHCC's assets by purporting to transfer the intellectual property to SHIPH, first, without actually owning it, and second, without any consideration.  *See* Healy Dec. Ex. 40 (SHIPH Tr.) at 34:14-35:10; 36:2-37:6; 38:15-41:1; 43:5-47:1; 48:4-7; 56:24-59:12; 60:13-61:11 (and exhibits cited therein); and Section II.D., *supra*.

Plaintiffs claim they voted to dissolve SHCC on June 8, 2012 (Healy Dec. Ex. 40 (SHIPH Tr.) at 44:5-46:22 and Ex. 91 thereto), and then filed a certificate of election to dissolve SHCC with the Secretary of State's Office on the same day.  *See id.* at 42:11-17, and Ex. 90 thereto. Thereafter, each of them supposedly "transferred" their claimed proportionate share of the SHCC IP to SHIPH, also on June 8, 2012.  *See* Healy Dec. Ex. 40 (SHIPH Tr.) at 56:21-59:12 and Exs. 93-96 thereto; Healy Dec. Ex. 42.  As discussed above, this supposed transfer violates both the California Corporations Code and SHCC's Bylaws.  *See* Strege Dec. Ex. 9 (Bylaws), Art. II, §1; Cal. Corp. Code §§ 12653(a); 12656.  Despite their claims to have owned and transferred SHCC's assets, Plaintiffs never paid or made provision for SHCC's debts and so never individually acquired the assets.  *See* Healy Dec. Ex. 40 (SHIPH Tr.) at 35:11-36:1; 41:2-43:4.

Plaintiffs' belief that they were the last members of SHCC and were entitled to transfer its assets to SHIPH is irrelevant.  "Conversion is a strict liability tort.  . . . , the tort consists in the breach of an absolute duty; the act of conversion itself is tortious.  Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Burlesci v. Peterson*, 68 Cal. App. 4th 1062, 1066 (1998).

By contrast with Plaintiffs, SHRI has an interest in SHCC's assets.  SHRI's license gives

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   it a property interest in the Marks.  *See Innovation Ventures, LLC v. Pittsburg Wholesale Grocers,*

2   *Inc.* Case No. C 12–05523 WHA, 2013 WL 1007666, at *3-*6 (N.D. Cal. Mar. 13, 2013);

3   *Ultrapure Systems, Inc. v. Ham-Let Group*, 921 F. Supp. 659, 666 (N.D. Cal. 1996).

4        Finally, Counterclaimants have been damaged by Plaintiffs' assertion of control over their

5   intellectual property; their purported termination of SHRI's license; their fraudulent registration

6   of the Marks at the USPTO; and their maintenance of unfounded litigation which has clouded

7   Counterclaimants' right and title to the Marks and other intellectual property.

8        Because Plaintiffs have purported to have taken possession of SHCC's assets, in which

9   SHRI also has an interest, without authority or consent, they are liable for conversion and

10  Counterclaimants are entitled to a judgment against Plaintiffs.  Moreover, Counterclaimants are

11  entitled to recover the Marks (including with respect to their registration at the USPTO), and to

12  any applicable damages.  *See* Cal. Civ. Code § 3336.

13       **E.**    **Plaintiffs Have Violated Counterclaimants' Trademark Rights**

14             **1.  Lanham Act Violations**

15       Counterclaimants have asserted claims against Plaintiffs for trademark violations in

16  Counts 6, 8 and 10.  As discussed above (*see* Section, II.D, *supra*), Plaintiffs have falsely asserted

17  that SHIPH owns and controls the Marks, and have purported to terminate SHRI's perpetual,

18  exclusive license to them.  Plaintiffs' actions are infringing, diluting, false advertising, and a false

19  designation of origin.

20       "Section 43(a) of the Lanham Act makes actionable the deceptive and misleading use in

21  commerce of "any word, term, name, symbol, or device" on any goods or in connection with any

22  goods." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1046 (9th Cir.

23  1998).  "Two goals of trademark law are reflected in the federal scheme.  On the one hand, the

24  law seeks to protect consumers who have formed particular associations with a mark.  On the

25  other hand, trademark law seeks to protect the investment in a mark made by the owner." *Avery*

26  *Dennison Corp. v. Sumpton*, 189 F.3d 868, 873 (9th Cir. 1999).

27       **Infringement:** "The traditional elements of a claim for trademark infringement are

28  ownership of a protectable mark and likelihood of confusion arising from defendant's use of the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

SHCC & SHRI'S MOT. PARTIAL SUMM.
JUDGMENT TO COUNTS 1, 6, 8, 10, 18, 19 & 23;
MEMO. OF PTS. & AUTHS. - 3:15-CV-01382-LB

mark." *ProtectMarriage.com v. Courage Campaign*, 680 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010) (*citing Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007)); *Kendall-Jackson*, 150 F.3d at 1046-47 ("To state an infringement claim under § 43(a) . . . a plaintiff must meet three basic elements: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion.").  "Neither actual confusion nor intent is necessary to a finding of likelihood of confusion." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1177 (9th Cir. 1988).

   **Dilution:** To prove dilution, a plaintiff "must show that its mark is famous and distinctive, that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and that defendant's mark is likely to dilute plaintiff's mark." *Visa Intern. Service Ass'n v. JSL Corp.*, 610 F.3d 1088, 1089-90 (9th Cir. 2010).  The "mark used by the alleged diluter must be identical, or nearly identical, to the protected mark for a dilution claim to succeed." *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1011 (9th Cir. 2004).

   **False Designation of Origin:** "To prove a false designation of origin claim, a plaintiff must show that defendant (1) uses a false designation of origin; (2) in interstate commerce; (3) and in connection with goods or services; (4) when the designation is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff has been or is likely to be damaged by these acts." *Rondberg v. McCoy*, No. 09-CV-1672-H (CAB), 2009 WL 3017611, at *8 (S.D. Cal. Sept. 21, 2009) (citing 5 McCarthy on Trademarks and Unfair Competition, § 27:13 (4th ed.)).

### 2.   Plaintiffs Have Infringed Counterclaimants' Rights in its Marks

   Plaintiffs' wrongful claim of ownership to and use of the Marks without authorization infringes Counterclaimants' rights to the Marks.  As discussed above (*see* Section II.D, *supra*), Plaintiffs have never owned but had only a limited license to use the Marks.  *See* Healy Dec. Ex. 39 (C. English Depo Tr.) at 126:10-127:25; Strege Dec., Ex. 1, §§ V.E & D.

   Although SHIPH is listed as the registered holder of the trademarks (*see* Healy Dec. Ex 40 (SHIPH Tr.) at 49:10-52:13 and Ex. 92 thereto), it procured that registration based on a false claim of ownership and as a result of Plaintiffs' misconduct in converting SHCC's assets and purportedly transferring them to SHIPH.  By falsely claiming to own the Marks, and even

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

registering SHIPH as their owner, Plaintiffs have created a strong likelihood of confusion.

Moreover, Plaintiffs violated their membership agreements and created a strong likelihood of confusion by using the phrase "Straw Hat" as part of SHIPH's name. *See* Strege Dec., Exs. 1-6 (Membership Agreement) ¶ VI.D.1. The use of "Straw Hat" in SHIPH's name is deceptive and likely to cause confusion where it suggests that SHCC and SHRI have approved that use.

Courts within the Ninth Circuit employ the multi-factor test set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir.1979) to determine whether a trademark owner has demonstrated a likelihood of confusion. No single factor is dispositive, and indeed, the relevance of any factor or set of factors depends on the particular facts of the case before the court. *See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632-33 (9th Cir. 2007); *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1096 (9th Cir. 2013).

Here, the *Sleekcraft* factors weigh in Counterclaimants' favor. There is no dispute that the parties are using the same or nearly identical marks, to sell the same goods, using the same marketing materials as part of the "Straw Hat System." In fact, under SHIPH, Plaintiffs have set up a parallel system to SHCC. *See* Healy Ex. 39 (C. English Tr.) at 61:22-62:14. Despite taking in payments from Plaintiffs (*see* Healy Dec. Ex. 40 (SHIPH Tr.) at 99:3-15), SHIPH is not policing their restaurants. In fact, when asked whether he knew "what decor individual restaurants are using, or what recipes they're using, or whether or not they are abiding by any of the qualities or quality controls that are listed in any SHCC operating agreement," Cole English responded "Most of them aren't." *Id.* at 280:16-25.

### 3. Plaintiffs Have Directly and Contributorily Infringed the Marks

"To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)). Here, Plaintiffs formed SHIPH to hold the Marks; supposedly transferred their claimed *pro rata* share of SHCC's assets, including the Marks, to SHIPH; and executed documents purporting to do so. *See* Healy Dec. Ex.

SHCC & SHRI'S MOT. PARTIAL SUMM.
JUDGMENT TO COUNTS 1, 6, 8, 10, 18, 19 & 23;
MEMO. OF PTS. & AUTHS. - 3:15-CV-01382-LB

*Ropers Majeski Kohn & Bentley*
A Professional Corporation
Redwood City

1   40 (SHIPH Tr.) at 13:19-14:4, 22:7-15, 23:12-14, Ex. 88 thereto at § 5.2(a); *id*. at 39:12-41:1, and

2   Ex. 89 thereto; *id*. at 56:21-61:11, and Exs. 93-96 thereto, and Healy Dec. Ex. 43.  Plaintiffs

3   further caused their counsel to register the trademarks in SHIPH's name at the USPTO and

4   Harrison emailed a copy of the registration of the purported assignment to Cole English and

5   Randy Mathews "for peace of mind."  *Id*. at 49:12-16 and Ex. 92 thereto.   All of the Plaintiffs

6   directly and through their vehicle, SHIPH, infringed the Marks.

### 4.   Plaintiffs are Liable for False Designation of Origin

8          To establish a claim for false designation of origin, a plaintiff must prove that the

9   defendant "(1) used in commerce (2) any word, false designation of origin, false or misleading

10  description, or representation of fact, which (3) is likely to cause confusion or mistake, or to

11  deceive, as to sponsorship, affiliation, or the origin of the goods or services in question."  15

12  U.S.C. § 1125(a)(1)(A).   Plaintiffs have misrepresented their ownership of the Marks, interfered

13  with Counterclaimants' rights to the Marks, and are in breach of their membership agreements, all

14  of which "is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or

15  the origin of the goods or services in question."  *Id*.

16         The Ninth Circuit has held that false designation of origin is similar to infringement.

17  "Both statutes preclude the use of another's trademark in a manner likely to confuse the public

18  about the origin of goods."  *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912,

19  917 (9th Cir. 1980); *see also New West Corp. v. NYM Co. of California Inc.*, 595 F.2d 1194, 1201

20  (9th Cir. 1979) ( "Whether we call the violation infringement, unfair competition or false

21  designation of origin, the test is identical is there a "likelihood of confusion?").

### 5.   Plaintiffs are Liable for Trademark Dilution

23         Although Plaintiffs do not own or control the Marks, they have held themselves out as the

24  Marks' owners, including by registering their purported ownership with the USPTO.  Moreover,

25  SHIPH has sued Defendants for trademark infringement.  *See* Healy Dec. Ex. 40 (SHIPH Tr.) at

26  49:10-52:13 and Ex. 92 thereto; TAC, Count 7, ECF No. 1-14.  Plaintiffs' actions not only exhibit

27  extraordinary chutzpah, they are prohibited by Section 1125(a) of the Federal Trademark Dilution

28  Act.  "Dilution is a cause of action invented and reserved for a select class of marks — those

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

SHCC & SHRI'S MOT. PARTIAL SUMM.
JUDGMENT TO COUNTS 1, 6, 8, 10, 18, 19 & 23;
MEMO. OF PTS. & AUTHS. - 3:15-CV-01382-LB

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   marks with such powerful consumer associations that even non-competing uses can impinge on

2   their value." *Avery Dennison*, 189 F.3d at 875; 15 U.S.C. § 1127.

3   　　　Plaintiffs may argue that by operating their Straw Hat restaurants under a license granted

4   in their membership agreements, they cannot be liable for dilution either by blurring or

5   tarnishment.  However, those Plaintiffs who are still operating Straw Hat restaurants are not doing

6   so pursuant to their membership agreements.  Instead, they are operating them in violation of the

7   membership agreements, including by paying administrative and marketing fees to SHIPH, rather

8   than SHCC.  *See* Healy Dec. Ex. 40 (SHIPH Tr.) at 99:3-15.  They are further diluting and

9   tarnishing the Marks by using the Straw Hat name, but failing to comply with the quality and

10  other controls set out in their membership agreements with SHCC.  *See* Healy Ex. 39 (C. English

11  Tr.) at 61:22-62:14; 280:16-25.

12  　　　By violating the terms of their membership agreements, and falsely claiming to own and

13  control the Marks, Plaintiffs are no longer entitled to use the Marks in operating their restaurants.

14  *See* Strege Dec., Exs 1-6, § VII.A.2.  By continuing to use them while not in compliance with the

15  membership agreements, Plaintiffs have diluted the Marks' value by tarnishment.  Plaintiffs have

16  thereby put Counterclaimants' "name and reputation at [their] mercy."  *Panavision Intern., L.P. v.*

17  *Toeppen*, 141 F.3d 1316, 1327 (9th Cir. 1998).

18  　　　　　**6.   Counterclaimants are Entitled to Recover Lanham Act Damages**

19  　　　Counterclaimants are entitled to recover Lanham Act damages.  Specifically, "the plaintiff

20  shall be entitled, . . .  subject to the principles of equity, to recover (1) defendant's profits, (2) any

21  damages sustained by the plaintiff, and (3) the costs of the action. . . .  the court may enter

22  judgment, . . . , for any sum above the amount found as actual damages, not exceeding three times

23  such amount."  15 U.S.C. § 1117(a); *see also Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d

24  1105, 1111-12 (9th Cir. 2012).  Damages for trademark infringement "are typically measured by

25  any direct injury the plaintiff can prove, as well as any lost profits which the plaintiff would have

26  earned but for infringement."  *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th

27  Cir.1993).  While a plaintiff need not calculate damages with "absolute exactness," it must offer

28  "a reasonable basis for computation" to show that damages are not "remote and speculative."  *Id.*

1   at 1407-08; *see also DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1222 (9th Cir. 2010).

2       Further, the "the court in exceptional cases may award reasonable attorney fees to the

3   prevailing party." 15 U.S.C. § 1117(a). "While the term 'exceptional' is not defined in the

4   statute, generally a trademark case is exceptional for purposes of an award of attorneys' fees

5   when the infringement is malicious, fraudulent, deliberate or willful." *Lindy Pen*, 982 F.2d at

6   1409; *see also Intel Corp. v. Terabyte Intern., Inc*., 6 F.3d 614, 621 (9th Cir. 1993). Here,

7   Plaintiffs' claim to and use of the Marks is certainly willful. They intentionally took sets to set up

8   a new company, SHIPH, and transferred the Straw Hat intellectual property to that company, for

9   the purpose of removing it from SHCC and SHRI's control.

10      Here, Counterclaimants' expert has calculated damages from Plaintiffs' trademark

11  violations at between $164,143 (royalty) and $5,968,834 (disgorgement of profits). *See* Expert

12  Report of Neil Zoltowski at 11, 14. Counterclaimants are entitled to recover at least this amount,

13  plus attorneys' fees and costs.

14  **IV.   CONCLUSION**

15      For the foregoing reasons, Counterclaimants are entitled to judgment in their favor and

16  against each of the Plaintiffs on Counts 1, 6, 8, 10, 18, 19, and 23. Further, Counterclaimants are

17  entitled to recover the trademarks, and to an award of damages as appropriate.

18  Dated:  February 4, 2016                Respectfully submitted,

19                                          ROPERS, MAJESKI, KOHN & BENTLEY

20                                          By: /s/ Todd A. Roberts
21                                          _____
                                            TODD A. ROBERTS
                                            ENRIQUE MARINEZ
22                                          NICOLE S. HEALY
                                            Attorneys for Defendant/Counter-Claimant
23                                          STRAW HAT RESTAURANTS, INC.,
                                            Counter-Claimant STRAW HAT
24                                          COOPERATIVE CORPORATION, and
                                            Defendants JEFFREY EASON, SAL LISTEK,
25                                          DEBORAH MORRIS, CLARK RUPP,
                                            RANDY WISE, AND ALLEN STREGE

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City