TODD A. ROBERTS (SBN 129722)
ENRIQUE MARINEZ (SBN 160956)
NICOLE S. HEALY (SBN 157417)
ROPERS, MAJESKI, KOHN & BENTLEY
1001 Marshall Street, Suite 500
Redwood City, CA  94063-2052
Telephone:      (650) 364-8200
Facsimile:      (650) 780-1701
Email:          todd.roberts@rmkb.com
                enrique.marinez@rmkb.com
                nicole.healy@rmkb.com

Attorneys for Defendant/Counter-Claimant
STRAW HAT RESTAURANTS, INC.,
Counter-Claimant STRAW HAT
COOPERATIVE CORPORATION, and
Defendants JEFFREY EASON, SAL LISTEK,
DEBORAH MORRIS, CLARK RUPP,
RANDY WISE, AND ALLEN STREGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENGLISH & SONS, INC., a California corporation; et al., | CASE NO. 3:15-cv-01382-LB |
| Plaintiffs, | **DEFENDANTS STRAW HAT RESTAURANTS, INC., JEFFREY EASON, SAL LISTEK, DEBORAH MORRIS, CLARK RUPP, RANDY WISE, AND ALLEN STREGE'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO COUNTS 2, 3, AND 7 OF PLAINTIFFS' THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| STRAW HAT RESTAURANTS, INC., a California corporation; et al., | |
| Defendants. | |
| | Hearing Date:   March 10, 2016 |
| | Time:            9:30 a.m. |
| | Courtroom:      C |
| | Magistrate Judge:      Hon. Laurel Beeler |
| AND RELATED COUNTER-CLAIM. | Removal filed:  March 25, 2015 |
| | Trial Date: May 16, 2016 |

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................2

II.   BACKGROUND ..................................................................................................3

    A.    The Parties ................................................................................................3

    B.    As a Cooperative, SHCC's Growth Was Limited, So SHRI Was Developed to Grow the Straw Hat Business to Benefit SHCC's Members.............................4

    C.    Following Extensive Discussion, the Majority of SHCC's Members Voted to Wind-up and Dissolve the Company on June 15, 2011 ...................................5

    D.    In June 2012, Plaintiffs Purportedly Transferred SHCC's Intellectual Property to SHIPH for No Consideration ..............................................................7

    E.    Cole English Authorized the Filing of the Third Amended Complaint While He Was a Member of SHRI's Board of Directors .......................................9

    F.    Plaintiffs' Third Amended Complaint ...................................................10

III.  ARGUMENT .....................................................................................................10

    A.    Legal Standard for Granting Summary Judgment ..................................10

    B.    SHIPH Cannot Bring a Claim for Infringement Where it Does Not Own SHCC'S Assets, Including the Straw Hat Trademarks .........................................11

        1.    SHCC's Members as of June 15, 2011 Did Not Lose Their Rights to its Assets by Becoming Franchisees Following the Vote to Dissolve SHCC .........................................................................................11

        2.    SHIPH Does Not Own the Straw Hat Trademarks...................................12

        3.    Because SHIPH Does Not Own the Marks, it Cannot Bring Claims for Trademark Infringement Against Defendants.......................................13

        4.    Even if SHIPH Owned the Marks, Which it Does Not, as a Director of SHRI, Cole English Authorized and Acquiesced in Defendants' Use of the Marks ...........................................................................................14

        5.    Eason and Rupp Cannot be Liable for Infringement Because they Closed Their Restaurants Before SHIPH Claims to Have Acquired the Marks ...........................................................................................15

    C.    Plaintiffs Have Abandoned Their Requests to Inspect SHCC's and SHRI's Books and Records .................................................................................15

IV.   CONCLUSION..................................................................................................17

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

# TABLE OF AUTHORITIES

Page

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................................10

*Andrews Farms v. Calcot, Ltd.*,
    258 F.R.D. 640 (2009).............................................................................................12

*Applied Info. Scis. Corp. v. eBay, Inc.*,
    511 F.3d 966 (9th Cir. 2007) ..................................................................................13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................................10

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003).................................................................................................12

*E.H. Morrill Co. v. State*,
    65 Cal.2d 787 (1967)...............................................................................................12

*H & J Foods, Inc. v. Reeder*,
    477 F.2d 1053 (9th Cir.1973) ..................................................................................15

*In re William C. Rupp and Susan L. Rupp*,
    Case No. 4:12bk42210 (Bankr. N.D. Cal. 2012). ECF No. 17................................4

*Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*,
    Case No. C 12–05523 WHA, 2013 WL 1007666 (N.D. Cal. Mar. 13, 2013)........14

*Omega Nutrition U.S.A. Inc. v. Spectrum Marketing, Inc.*,
    756 F. Supp. 435 (N. D. Cal. 1991) ........................................................................14

*ProtectMarriage.com v. Courage Campaign*,
    680 F. Supp. 2d 1225 (E.D. Cal. 2010) ..................................................................13

*Ricks v. BMEzine.com, LLC*,
    727 F. Supp. 2d 936 (D. Nev. 2010)........................................................................15

*Sanchez v. Grain Growers Ass'n of California*,
    126 Cal. App. 3d 665 (1981) ...................................................................................12

*Shakey's Inc. v. Covalt*,
    704 F.2d 426 (9th Cir. 1983) ...................................................................................12

*Singh v. Singh*,
    114 Cal. App. 4th 1264 (2004) ................................................................................12

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- ii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Ultrapure Systems, Inc. v. Ham-Let Group,*
921 F. Supp. 659 (N.D. Cal. 1996) ........................................................................ 14

**STATUTES**

15 U.S.C. § 1057 .......................................................................................................... 14

Cal. Corp. Code § 300(a) ............................................................................................. 14

Cal. Corp. Code § 1602 ................................................................................................ 16

Cal Corp. Code § 1603 ................................................................................................ 15

Cal. Corp. Code § 12606 ....................................................................................... 15, 16

Cal. Corp. Code § 12653(a) ......................................................................................... 13

Cal. Corp. Code § 12656 .............................................................................................. 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) .................................................................................................... 10

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- iii -

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on March 10, 2016, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom C, 15th Floor of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, the Honorable Laurel Beeler presiding, Defendants Straw Hat Restaurants, Inc., Jeffrey Eason, Sal Listek, Deborah Morris, Clark Rupp, Randy Wise, and Allen Strege (collectively, "Defendants"), will and hereby do move for an Order granting Defendants' Motion for Partial Summary Judgment as to Counts 2, 3, and 7 of Plaintiffs' Third Amended Complaint for Damages and Equitable Relief ("Motion for Partial Summary Judgment - TAC").

Specifically, Defendants ask this Court to grant judgment in their favor as to the foregoing claims.  Although SHIPH has sued Defendants for trademark infringement, it never owned or had any lawful claim to the Straw Hat trademarks (the "Marks").  As a stranger to the Marks, SHIPH cannot enforce claims for infringement.  Additionally, Plaintiff Cole English, who was both the managing member of SHIPH and a director of SHRI when the TAC was filed, was responsible for managing the company's operations including its use of the Straw Hat trademarks and he acquiesced in and authorized the use of the trademarks.  Further, Eason and Rupp did not operate Straw Hat restaurants and were no longer on the Board when the TAC was filed.  Finally, Plaintiffs have abandoned their claims to seek an inspection of SHCC's and SHRI's books.

Defendants' Motion for Partial Summary Judgment is based on this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the Declarations, and Exhibits filed concurrently herewith, all matters of which the Court may take judicial notice, and such other arguments and evidence as may be presented before or at the hearing on the Motion.

### STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Plaintiff SHIPH can bring claims for trademark infringement where it neither owns nor has a lawful right to the Marks?

2. Whether, because he was a managing member of Plaintiff SHIPH and a member of Defendant SHRI's Board of Directors at the time Plaintiffs' Third Amended Complaint was filed and was charged with managing the company, Cole English acquiesced in and

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   authorized the use of the trademarks by Defendants SHRI, Morris, Listek, Wise, and

2   Strege.

3   3.   Whether Defendants Eason and Rupp cannot be liable for trademark infringement where

4        they have not owned Straw Hat restaurants since 2011 — before Plaintiff SHIPH claims

5        to have acquired the trademarks.

6   4.   Whether Plaintiffs abandoned their claims to seek an inspection of SHCC's and SHRI's

7        books and records.

8                     **MEMORANDUM OF POINTS AND AUTHORITIES**

9   **I.     INTRODUCTION**

10          Plaintiff Straw Hat IP Holdings, LLC ("SHIPH"), has never owned nor been lawfully

11   granted a license to use the Straw Hat trademarks (the "Marks").  Despite that, it has sued

12   Defendants Straw Hat Restaurants, Inc. ("SHRI"), Jeffrey Eason ("Eason"), Sal Listek ("Listek"),

13   Deborah Morris ("Morris"), Clark Rupp ("Rupp"), Randy Wise ("Wise"), and Allen Strege

14   ("Strege," and collectively,  "Defendants"), for trademark infringement.

15          SHIPH was created in June 2012 to perpetrate a scheme hatched by Plaintiffs English &

16   Sons, Inc., Cole English, Donna English (collectively, "English"); Formatts Enterprise, LLC

17   ("Formatts"); Mehrok Foods, Inc. ("Mehrok"); Mostafa Sehhat and Olga Sehhat ("Sehhat"); and

18   Pizza Pierates, LLC ("Pizza Pierates," and collectively, "Plaintiffs") by which they claimed to be

19   the sole members of Straw Hat Cooperative Corporation ("SHCC"), and then further claimed to

20   have "transferred" its assets, for no value, to themselves, and then on to SHIPH.  Plaintiffs base

21   their spurious claim on the fact that after the majority of SHCC's members voted on June 15,

22   2011 to wind down and dissolve SHCC and transferring its assets to SHRI, the members of

23   SHCC other than Plaintiffs became franchisees of SHRI.  Citing a single provision of SHCC's

24   Bylaws, Plaintiffs contend that the other SHCC members abandoned their interest in SHCC,

25   including its Marks, and that Plaintiffs therefore were the sole remaining SHCC members and

26   owned and controlled all of its assets.  Based on their false claim of ownership, Plaintiffs

27   supposedly transferred the Marks to SHIPH, and registered them with the U.S. Patent and

28   Trademark Office ("USPTO").

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Because SHIPH does not own, has never owned, and has no lawful right to the Marks, it

2    cannot assert claims for trademark infringement against Defendants.  Moreover, because Cole

3    English managed and directed SHIPH's and SHRI's activities, even if SHIPH had owned or was

4    licensed to use the Marks, Defendants cannot be liable for infringement.

5    In addition, Cole English has been a managing member of SHIPH since it was created in

6    June 2012, yet between August 2014 and July 2015, he was also a member of SHRI's Board of

7    Directors.  He, and the other Plaintiffs, caused the TAC to be filed on February 19, 2015, while he

8    was a Board member.  While he was suing SHRI for trademark infringement, as a board member

9    of SHRI, Cole English was responsible for managing SHRI's activities, including with respect to

10    the Marks.  Finally, there is no basis for infringement claims against Eason and Rupp who have

11    not owned Straw Hat restaurants since December 2011.

12    Plaintiffs have also brought claims for inspection of SHRI's and SHCC's documents.

13    Plaintiffs abandoned these claims when, during the nearly year-long period he was an SHRI

14    director, Cole English never sought access to those records.

15    **II.**    **<u>BACKGROUND</u>**

16        **A.**  **<u>The Parties</u>**

17    SHCC was formed in 1987 as a cooperative corporation, owned and operated by its

18    members.  *See* Declaration of Allen Strege ("Strege Dec.") ¶ 5.  SHRI was formed in 2006 as a

19    California corporation.  *Id*. ¶ 6.

20    Except for Plaintiff SHIPH, the Englishes,[1] Formatts, Mehrok, Sehhat, and Pizza Pierates,

21    are or were members of SHCC who owned and operated one or more Straw Hat Pizza restaurants.

22    *See* Strege Dec. ¶ 7 and Exhibits 1-6 thereto (Plaintiffs' membership agreements).

23    SHCC and SHRI were managed by Boards of Directors, which at times included

24    Defendants Wise, Listek, Morris, Rupp, and Eason, each of whom also own or owned one or

25    more Straw Hat Pizza restaurants directly or through their respective business entities.  Eason

26    closed his Straw Hat Pizza restaurant on December 23, 2011.  Rupp closed his Straw Hat Pizza

27

28    [1] Cole English and Donna English own and control "Representative Plaintiff" English & Sons, Inc.  *See* Healy Dec. Ex. 39 (Cole English Depo. Tr.) at 17:2-17.

DEFTS' MOT. PARTIAL SUMMARY JDMT TO
COUNTS 2, 3, & 7 OF PLTFS.' TAC; MEMO. OF
PTS. & AUTHS. - 3:15-CV-01382-LB

1   restaurant on December 12, 2011.[2]  *See* Strege Dec. ¶ 22.

2          Strege was an employee of SHCC and SHRI and has never been a member of SHCC.  *See*

3   Strege Dec. ¶ 2.  Former Defendant Jonathan Fornaci ("Fornaci") was president of SHRI and

4   SHCC from 2007 until December 2011.  *See* Declaration of Nicole S. Healy ("Healy Dec.") Ex.

5   42 (Wise Depo. Tr.) at 13:6-12.

6          **B.  As a Cooperative, SHCC's Growth Was Limited, So SHRI Was Developed to
       Grow the Straw Hat Business to Benefit SHCC's Members**

7

8          As a member-owned, non-profit cooperative, SHCC's growth potential was limited.

9   SHCC's revenues primarily derived from member assessments (which were frequently late or

10  unpaid)[3] and to a lesser degree, rebates from members' purchases from certain vendors.  *See*

11  Strege Dec. ¶ 5.  To grow the Straw Hat business, the Boards of the two companies took steps to

12  expand SHRI's role and reduce SHCC's.  To that end, in 2008, SHRI began offering Straw Hat

13  franchises.  *Id*. ¶ 6.

14         In mid-2008, SHCC's Board of Directors presented to the Company's members a motion

15  to amend the Bylaws.  The motion and the ballot were supplied to members as of June 1, 2008.

16  *See* Strege Dec., Exs. 7-8 thereto (Motion and Ballots).  Each of the Plaintiffs who were then

17  eligible voting members of SHCC voted in favor of the motion.  *See* Strege Dec., Ex. 8 (Donna

18  English, Skip Sehhat, Gurmeet Mehrok).  The motion passed on July 13, 2008 without dissent.

19  Strege Dec. ¶ 8.

20         Among other things, the motion provided that "SHCC perpetually licenses to SHRI the

21  use of Straw Hat logo, trademarks, intellectual property, systems, training, technology, artwork,

22  advertisement, marketing, processes and procedures."  Strege Dec., Ex. 7 (Motion) ¶ 8.  The

23  September 1, 2008 Amended and Restated Bylaws that were the subject of the motion also

24

25  [2] Rupp filed a petition for Chapter 7 bankruptcy protection on March 12, 2012, and was
    discharged on June 12, 2012.  *See In re William C. Rupp and Susan L. Rupp*, Case No.

26  4:12bk42210 (Bankr. N.D. Cal. 2012).  ECF No. 17.

27  [3] The Englishes were in arrears at various times, as was Pizza Pierates.  *See, e.g.*, Healy Dec. Ex.
    39 (C. English Depo. Tr.) at 51:17-22, 116:7-10, 122:22-123:1, 193:5-8; Healy Dec. Ex. 41

28  (Harrison Depo. Tr.) at 11:5-8, 11:12-14:14.

DEFTS' MOT. PARTIAL SUMMARY JDMT TO
COUNTS 2, 3, & 7 OF PLTFS.' TAC; MEMO. OF
PTS. & AUTHS. - 3:15-CV-01382-LB

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

provide that SHCC would license its intellectual property to SHRI.  *See* Strege Dec., Ex. 9

(Bylaws) Art. VI, § 6.d.  In return, SHRI would provide services to SHCC.  *See id.*, Art. VI, § 6.c.

On behalf of SHCC and SHRI, Fornaci executed a "System License Agreement,"

effective October 27, 2008.  Pursuant to that agreement, SHCC perpetually licensed its

intellectual property to SHRI for $4,166 per month, and SHRI agreed to provide SHCC with "all

services needed to operate which includes but is not limited to Accounting, Operations,

Administrative, Marketing, Field Sales and Operational support along with Executive

Management" for $60,311 per month.  *See* Strege Dec., Ex. 10 (System License Agreement).

Among other things, the perpetual exclusive license expressly granted SHRI the right to

prosecute violations.  *See id.* ¶ 14.A. (granting SHRI the "right, in its discretion, to institute and

prosecute lawsuits against third persons for infringement of the rights licensed in this

Agreement.").

**C.  Following Extensive Discussion, the Majority of SHCC's Members Voted to Wind-up and Dissolve the Company on June 15, 2011**

On January 27, 2011, Jonathan Fornaci emailed Defendants Wise, Listek, Morris, and

Eason, and non-defendant SHCC directors Arthur ("Sonny") Mitchell, Pamela Anderson, and

Gagan Singh.  The email referred to a discussion at a recent SHCC board meeting in Pismo

Beach, and proposed winding down SHCC and issuing a ballot to:  "Vote to close SHCC down;"

and "Transfer intellectual property to SHRI which SHRI already has via a perpetual license;"

provide the members with certain financial benefits for converting their restaurants to franchises.

Declaration of Randal Wise ("Wise Dec."), Ex. 31.

On February 8, 2011, Fornaci met with the SHCC Board of Directors, then composed of

Defendants Rupp, Eason, Morris, and Listek, and non-defendants Arthur ("Sonny") Mitchell,

Pamela Anderson, and Gagan Singh, and discussed closing down SHCC and carrying on the

Straw Hat business through SHRI.  *See* Wise Dec., Ex. 32 (Board minutes).  By May 1, 2011,

SHCC's Board presented to the members a proposal to wind up and dissolve SHCC, transfer its

assets to SHRI, and give the members the option of receiving a distribution or operating their

restaurants as SHRI franchises.  The proposal was outlined in a ballot issued first on May 1, 2011,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1   and then re-issued on June 3, 2011, following discussions and revision.

2         The members discussed the proposal by email, and extensively questioned the Board and

3   Fornaci, both in emails and in live meetings.  *See* Wise Dec. Ex. 33 (email chain).   The Board

4   members also discussed the question at length among themselves.   *See* Wise Dec. ¶ 12.

5         On June 15, 2011, the majority of SHCC's members, including Defendants and Plaintiff

6   Pizza Pirates, voted to wind up and dissolve SHCC.  *See* Strege Dec., Exs. 11-18 (Defendants'

7   ballots and Pizza Pirates's ballot).  The remaining Plaintiffs voted against the dissolution.  *See*

8   Strege Dec., Exs. 19-24 (ballots executed by the Englishes, Formatts, Mehrok, and Sehhat).  The

9   motion carried, with 23 out of the 42 memberships voting in favor of dissolving SHCC and

10  transferring its assets to SHRI.  *See* Strege Dec., Ex. 25 (tally sheets); Wise Dec. Ex. 35 (email

11  announcing the results).

12        The written ballot provided that the following would occur on dissolution.  SHCC's

13  Directors would transfer "all intellectual property rights of SHCC including ownership of all

14  trademarks, copyrights and trade secrets to [SHRI] in exchange for payment of debt or for fair

15  value."  *See* Strege Ex. 19 ¶1.A (English's ballot #35, Williams).  Further, SHCC's members had

16  the option of ***either*** "[r]eceiving the distributions the member would be entitled to receive upon

17  the dissolution of SHCC under the Bylaws and California law" ***or*** "[a]ssigning the member's

18  membership in SHCC to SHRI and offering those members who choose to assign their

19  membership to SHRI and who choose to enter into a franchise agreement with SHRI" certain

20  financial benefits.  *See id.* ¶1.B.  Members who became franchisees would receive a fixed 1.75%

21  royalty and advertising fee which would transfer with the business if it were sold; the same rate

22  for up to two additional restaurants and a $5,000 franchise fee for each under certain

23  circumstances; and 7,500 shares of SHRI stock.  *See id.* ¶1.B.ii.

24        Although the 2011 ballot offered only two options to members — either cash out or join

25  SHRI as a franchisee — Fornaci offered a third option.  Members who did not want to become

26  franchisees could choose to operate their restaurants under their SHCC membership agreement

27  until the term of their agreement expired.  *See* Wise Dec. Ex. 33 (email chain) at ENG0000011,

28  n.11.  No one took him up on that offer.  Instead, when SHCC's members voted on June 15, 2011,

the majority elected to dissolve the corporation, transfer its assets to SHRI, and either cash out or become SHRI franchisees.  *See* Strege Dec. Ex. 25 (tally sheets); Wise Dec. Ex. 35 (email announcing the results); Wise Dec. Ex. 38 (SHRI's Response to Plaintiffs' RFA No. 2, & Ex. A).

Before becoming franchisees, SHCC members took steps to assure themselves that the trademarks would be transferred to SHRI.  None of them would have become SHRI franchisees if they had known that Plaintiffs would seek to hijack the trademarks.  *See* Declarations of Nemat Dadrass ¶¶ 9-11; Arthur Mitchell ¶¶ 7-10; Raj Nayyar ¶¶ 8-10; and Jim Pitzer at ¶¶ 9-11.

Plaintiffs objected to the dissolution and filed suit in Contra Costa County Superior Court against SHCC, SHRI, Fornaci, Eason, Morris, Listek, Rupp, and Wise, on October 19, 2011.  *See* SCF No. 1-1.

### D.   In June 2012, Plaintiffs Purportedly Transferred SHCC's Intellectual Property to SHIPH for No Consideration

Like all SHCC members, Plaintiffs were granted a limited license to use the Straw Hat Marks, recipes, service marks, and other intellectual property.  *See* Healy Dec. Ex. 39 (C. English Depo. Tr.) at 126:10-127:25, and Ex. 62 thereto (English & Sons Membership Agreement) § V.E. However, the Membership Agreement warned that the Marks belonged to SHCC, and informed members of the various limitations on their use of the Marks.  By signing the membership agreement, the SHCC members acknowledged that SHCC had the "Exclusive right to own, control, and license the use of Our Marks."  *Id*. § VI.D.1.  Further, the member agreed that "You will not contest, or help anyone else contest, Our ownership of them."  *Id*.  Members were also informed that "You have no individual right to them, or to any goodwill associated with them, now or in the future."  Members were also prohibited from "us[ing] the words 'Straw Hat' in a corporate or partnership name."  Despite that, Plaintiffs formed SHIPH with the words "Straw Hat" as part of its name.  *See* Healy Dec. Ex. 40 (SHIPH Depo Tr.) at 14:5-16.  SHCC also warned that it would "never be liable to You for any claimed loss to the Restaurant or to You because of infringement or claims of infringement."  *See* Healy Dec. Ex. 39 (C. English Depo Tr.) at 126:10-127:25, and Ex. 62 thereto (English & Sons Membership Agreement) § VI.D.3.

///

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

In 2012, Plaintiffs began contending that they were the sole members of SHCC, and purportedly elected themselves its directors in a meeting held on May 17, 2012.  *See* Strege Dec. Ex. 26 (Plaintiffs' notice of special meeting).  Plaintiffs base their clams on one clause in the SHCC Bylaws that provided that if a member converted their co-op restaurant to a franchise they would lose their SHCC membership.  *See* Strege Dec. Ex. 9 (Bylaws), Art. VII, § 3.

Claiming to represent SHCC, by letter dated May 24, 2012, Plaintiffs' counsel, Michael Grace, purported to terminate SHRI's perpetual license to SHCC's intellectual property, including the Marks.  *See* Healy Dec., Ex. 39 (C. English Depo. Tr.) at 177:16-178:14 and Ex. 69 thereto (May 24, 2012 letter from Michael Grace).  The letter questioned whether any license existed, and at the same time, contended that it was being terminated for "fraud in the inducement, lack of consideration, and also for material breach by SHRI," without supplying any support for those contentions.  *See id*.

On June 7, 2012, the individual plaintiffs and/or their principals, Cole English, Donna English, Randy Matthews (Formatts), Nick Harrison (Pizza Pierates), Olga Sehhat, and Gary Mehrok (Mehrok Foods), formed SHIPH for the purpose of holding SHCC's intellectual property. *See* Healy Dec. Ex. 39 (C. English Depo. Tr.) at 62:16-63:4; Healy Dec. Ex. 40 (SHIPH Depo. Tr.") at 14:2-4, 14:17-16:4; 16:19-18:16, and Ex. 86 thereto (SHIPH Articles of Organization).

On June 8, 2012, Plaintiffs (except SHIPH) purportedly voted to wind up and dissolve SHCC and to "distribute the net assets of SHCC to its Members on a 'per store' basis.  That same day, each of the Plaintiffs (except SHIPH) executed an "Intellectual Property Assignment" supposedly transferring their *pro rata* share of SHCC's intellectual property to SHIPH.  *See, e.g*., Healy Dec. Ex. 40 (SHIPH Depo. Tr.) at 44:5-46:22 and Ex. 91 thereto; and *id*. (SHIPH Depo. Tr.) at 56:21-59:12 and Exs. 93-96 thereto ("assignments"); and *id*. at 61:10-62:22; and Healy Dec. Ex. 42 ("Pizza Pierates' "assignment").

SHIPH did not supply any consideration in return for SHCC's intellectual property.  *See* Healy Dec. Ex. 40 (SHIPH 30(b)(6) Depo. Tr.) at 37:15-19.  Nor did the Plaintiffs pay or make any provision for the payment of SHCC's debts before purportedly transferring its intellectual property to SHIPH or filing a "Domestic Nonprofit Corporation Certificate of Election to Wind

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Up and Dissolve" with the California Secretary of State's Office on June 8, 2012.  *See* Healy Dec. Ex. 40 (SHIPH Depo. Tr.) at 42:8-43:3, and Ex. 90 thereto.

SHCC's Bylaws provide that "In the event of the dissolution of the Corporation, the Members of record at the time a certificate evidencing the Corporation's election to dissolve is filed, . . . shall receive the assets of the Corporation remaining after . . . (b) payment, or adequate provision for payment of all taxes, penalties, debts and liabilities; . . ." *Id*. at 41:23-42:4, 81:24-83:4; Ex. 97 thereto (SHCC Bylaws) Art. II, sec.1 (b).   Although he lacked any factual basis for his belief, Cole English testified that he simply did not believe that SHCC owed approximately $300,000 to SHRI at the time of the dissolution vote.  *See* Healy Dec. Ex. 39 (C. English Depo. Tr.) at 276:8-278:5; Healy Dec. Ex. 40 (SHIPH Depo. Tr.) at 35:9-36:1, 71:5-74:23, and Ex. 98 thereto (SHRI 2010 & 2011 Audited Financial Statements).

On June 20, 2012, Cole English and Nick Harrison executed a "Notice of Assignment of Trademarks."  Healy Dec. Ex. 40 (SHIPH Depo. Tr.) at 39:12-40:8 ad Ex. 89 thereto. Thereafter, on June 25, 2012, without any prior notice to SHCC, SHRI, or Defendants, Plaintiffs' counsel, Michael Grace, filed a notice of assignment with the U.S. Patent and Trademark Office ("USPTO") that purported to assign SHCC's trademarks to SHIPH.  *See* Healy Dec. Ex. 40 (SHIPH Depo. Tr.) at 49:10-52:13 and Ex. 92 thereto.

### E. Cole English Authorized the Filing of the Third Amended Complaint While He Was a Member of SHRI's Board of Directors

On August 8, 2014, Cole English was elected to SHRI's Board of Directors.   He resigned on July 22, 2015.  *See* Wise Dec. Exs. 36-37 (SHRI August 6, 2014 board minutes, and July 22, 2015 email); Healy Dec. Ex. 44 (C. English Response to RFA Set, No. 2) at Responses 7, 8.

On February 23, 2015, Plaintiffs filed the Third Amended Complaint for Damages and Equitable Relief ("TAC"), in the Contra Costa County Superior Court.  ECF No. 1-14.  While he was a director of SHRI, and in both his personal capacity and as a managing member of SHIPH, Cole English authorized his counsel to file the TAC.  *See* Healy Dec. Ex. 39 (C. English Depo. Tr.) at 93:21-95:1; Healy Dec. Ex. 40 (SHIPH Depo. Tr.) at 23:15-24:7, 25:1-5.  Cole English understood that he had fiduciary duties to SHRI while he was a director.  Healy Dec. Ex. 39 (C.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  English Depo. Tr.) at 95:2-7.  He initially testified that it was beneficial to SHRI to be sued, but

2  then somewhat reconsidered his testimony.  *Id.* at 95:8-18.

3      **F.**  **Plaintiffs' Third Amended Complaint**

4         The TAC asserts seven claims against Defendants, including, for the first time, a claim by

5  SHIPH for trademark infringement against all Defendants.  *See* TAC ¶¶ 90-100.  ECF No. 1-14.

6  SHIPH alleges that it owns the Straw Hat Marks (*id.* ¶ 93) and that all of the defendants had

7  "intentionally and knowingly used, and continue to use and display" the Marks to trade off Straw

8  Hat's reputation and good will, and to advertise food products and restaurant services, thereby

9  causing confusion mistake, or deception as to the origin, sponsorship, and affiliation of

10  Defendants with Straw Hat.  *See id.* ¶¶ 95-97.

11         SHIPH brings the trademark claim against all Defendants, including Eason and Rupp,

12  who have not been SHRI franchisees since December 2011.  *See* Strege Dec. ¶ 22.  The claim is

13  also pled against Strege, who, in his capacity as SHRI's president when the TAC was filed, and

14  thereafter as an employee, reported to the Board, including Cole English.

15         The "Representative Plaintiffs" (English & Sons, Formatts, Mehrok, and the Sehhats),

16  have brought a claim against Strege to inspect SHCC's records.  *See* TAC ¶¶ 64-68.  The

17  Englishes bring a claim against SHRI seeking to inspect its records.  *See* TAC ¶¶ 69-73.

18  **III.**  **ARGUMENT**

19      **A.**  **Legal Standard for Granting Summary Judgment**

20         Summary judgment is appropriate where the "movant shows that there is no genuine

21  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

22  Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The "mere

23  existence of some alleged factual dispute between the parties will not defeat an otherwise

24  properly supported motion for summary judgment; the requirement is that there be no *genuine*

25  issue of *material fact*."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis

26  in original).  "Only disputes over facts that might affect the outcome of the suit under the

27  governing law will properly preclude the entry of summary judgment."  *Id.* at 248.  If there are no

28  such factual disputes, and the movant has established its claim or defense, the court should enter

DEFTS' MOT. PARTIAL SUMMARY JDMT TO
COUNTS 2, 3, & 7 OF PLTFS.' TAC; MEMO. OF
PTS. & AUTHS. - 3:15-CV-01382-LB

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    judgment for the moving party.

2    **B.    SHIPH Cannot Bring a Claim for Infringement Where it Does Not Own SHCC'S Assets, Including the Straw Hat Trademarks**

3

4    **1.   SHCC's Members as of June 15, 2011 Did Not Lose Their Rights to its Assets by Becoming Franchisees Following the Vote to Dissolve SHCC**

5    Contrary to Plaintiff's contentions that SHIPH owns and controls the Straw Hat Marks

6    and other intellectual property (see TAC ¶¶ 92-93), in fact, SHCC owns and controls the Marks,

7    and SHRI has a perpetual license to use such Marks and the other Straw Hat intellectual property.

8    Moreover, the members of SHCC as of June 15, 2011 did not abandon their rights to the company

9    and its assets.  Specifically, those SHCC members who became franchisees did not abandon their

10   memberships.  Rather that was a step towards finalizing the dissolution and winding up of the

11   company.  None of the SHCC members would have become SHRI franchisees if they had known

12   that Plaintiffs would seek to hijack the trademarks.  *See* Dadrass Dec. ¶¶ 9-11; Mitchell Dec. ¶¶

13   7-10; Nayyar Dec. ¶¶ 8-10; and Pitzer Dec. at ¶¶ 9-11.

14   For Plaintiffs to simply disregard the will of the majority and attempt to seize control of

15   SHCC and its assets makes a mockery of corporate democracy.  *See, e.g.*, Healy Dec. Ex. 39 (C.

16   English Depo. Tr.) at 233:16-25.

17   Plaintiffs would have this Court believe that once the SHCC members began to complete

18   the wind up and dissolution process contemplated in the June 15, 2011 ballot measure, the

19   members abandoned their memberships and their interest in SHCC's assets, leaving Plaintiffs as

20   the sole remaining members of SHCC.  Plaintiffs base their theory on a single provision in

21   SHCC's bylaws, specifically Article VII, § 3 which provides that a "Member may sell, transfer or

22   convert a restaurant into a Franchise.  If the Member chooses to convert the store into a Franchise,

23   then such action will cause that Member to lose that share of the Corporation associated with that

24   restaurant."  Plaintiffs cannot point to any evidence indicating that when that provision was

25   drafted (three years before the dissolution vote) that the members understood and believed that it

26   would apply to a situation where all but six restaurants were converted to franchises following the

27   cooperative-wide resolution.  Nor can Plaintiffs show that the members understood, intended, and

28   believed that by carrying out the terms of the ballot, the members understood that they would

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

forfeit their interests in SHCC.

Plaintiffs take that provision out of context.  Like a contract, bylaws must be read in their entirety.  "It is generally accepted that corporate bylaws are to be construed according to the general rules governing the construction of statutes and contracts."  *See Andrews Farms v. Calcot, Ltd.*, 258 F.R.D. 640, 648 (2009) (*quoting Sanchez v. Grain Growers Ass'n of California*, 126 Cal. App. 3d 665, 672 (1981)); *see also Singh v. Singh*, 114 Cal. App. 4th 1264, 1294 (2004).  "A written contract must be read as a whole and every part interpreted with reference to the whole."  *Shakey's Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir. 1983).  Further, "[p]reference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory."  *Id.*; *see also E.H. Morrill Co. v. State*, 65 Cal.2d 787, 792 (1967).

While the provision at issue clearly addresses the circumstance in which a single restaurant owner decided to convert to a franchise, it was drafted years before the majority of members voted to wind up and dissolve SHCC.  Section 3 of Article VII ("Operational Matters") simply does not address what happens to SHCC's assets and the members' interest in them following a decision by the majority to wind up and dissolve the company.  As discussed below, an entirely separate provision located in Article II, "Membership," addresses dissolution and the subsequent disposition of the company's assets.  Strege Dec. Ex. 9 (Bylaws), Art. II, § 1.

### 2.   SHIPH Does Not Own the Straw Hat Trademarks

Plaintiffs neither individually owned nor controlled SHCC's assets as of June 8, 2012, when they purportedly transferred them to SHIPH.  *See* Section II.D, *supra*, and exhibits cited therein.  Even if they were the sole remaining members of SHCC on that date — which Defendants strenuously dispute — Plaintiffs did not own its assets.  "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).  "An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets . . ." *Id.* at 475.

Even under their own theory, however, Plaintiffs did not comply with California law or the Bylaws in supposedly obtaining SHCC's intellectual property or transferring it to SHIPH.  California law provides that, upon the payment or provision for known debts and liabilities, the

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  corporation may distribute its assets pursuant to its bylaws, or ratably to its members.  *See* Cal.

2  Corp. Code §§ 12653(a), 12656.   SHCC's Bylaws provide that "[i]n the event of the dissolution

3  of the Corporation, the Members of record at the time a certificate evidencing the Corporation's

4  election to dissolve is filed, . . . *shall receive the assets of the Corporation remaining after . . . ;*

5  *(b) payment, or adequate provision for payment of all taxes, penalties, debts and liabilities*; . . ."

6  Strege Dec. Ex 9 (Bylaws) Art. II, § 1(b) (emphasis added).

7           While Plaintiffs have claimed to be the sole remaining members of SHCC after the June

8  15, 2011 vote and the transition of other members to franchisees pursuant to the terms of the

9  ballot, Plaintiffs have also admitted not determining and paying SHCC's debts before the

10  purported assignment of its assets to SHIPH.  *See* Healy Dec. Ex. 39 (C. English Depo. Tr.) at

11  276:8-278:5; Healy Dec. Ex. 40 (SHIPH Depo. Tr.) at 35:9-36:1, 71:5-74:23, and Ex. 98 thereto.

12  Accordingly, even if they had been the sole members of SHCC — which Defendants strenuously

13  dispute — Plaintiffs never received a *pro rata* distribution of SHCC's assets because they never

14  satisfied the requirements of California law and the Bylaws.

15           **3.  Because SHIPH Does Not Own the Marks, it Cannot Bring Claims for
              Trademark Infringement Against Defendants**

16

17           In the TAC's seventh cause of action, Plaintiff SHIPH asserts claims against all

18  Defendants for trademark infringement under the Lanham Act.  As discussed above, (*see* Section,

19  II.D, *supra*, and exhibits cited therein), SHIPH does not own the Marks and or any other Straw

20  Hat intellectual property, nor does it have a lawful, exclusive license to use them.  *See* Wise Dec.

21  ¶ 16.  Accordingly, Defendants cannot be liable to SHIPH for infringement.

22           "The traditional elements of a claim for trademark infringement are ownership of a

23  protectable mark and likelihood of confusion arising from defendant's use of the mark."

24  *ProtectMarriage.com v. Courage Campaign*, 680 F. Supp. 2d 1225, 1228 (E.D. Cal. 2010) (*citing*

25  *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007)); *see also Kendall-*

26  *Jackson*, 150 F.3d at 1046-47 ("To state an infringement claim under § 43(a) . . . a plaintiff must

27  meet three basic elements: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of

28  confusion.").

DEFTS' MOT. PARTIAL SUMMARY JDMT TO
COUNTS 2, 3, & 7 OF PLTFS.' TAC; MEMO. OF
PTS. & AUTHS. - 3:15-CV-01382-LB

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    Here, as Defendants have shown, the individual Plaintiffs and their companies never

2    acquired SHCC's Marks, and therefore never transferred them to SHIPH. Where SHIPH does not

3    own the Marks or otherwise have a lawful, exclusive license to use them (*see Innovation*

4    *Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, Case No. C 12–05523 WHA, 2013 WL

5    1007666, at *3-*6 (N.D. Cal. Mar. 13, 2013); *Ultrapure Systems, Inc. v. Ham-Let Group*, 921 F.

6    Supp. 659, 666 (N.D. Cal. 1996)), it cannot sue Defendants for infringing them.

7    Further, the presumption that the registered owner of a trademark is the owner for

8    purposes of an infringement claim does not apply here. *See* 15 U.S.C. § 1057; *Omega Nutrition*

9    *U.S.A. Inc. v. Spectrum Marketing, Inc.*, 756 F. Supp. 435, 437-38 (N. D. Cal. 1991). Although

10   SHIPH is listed as the registered holder of the trademarks (*see* Healy Dec. Ex 40 (SHIPH Depo.

11   Tr.) at 49:10-52:13 and Ex. 92 thereto), it procured that registration based on a false claim of

12   ownership and as a result of Plaintiffs' misconduct in converting SHCC's assets and purportedly

13   transferring them to SHIPH.

### 4. Even if SHIPH Owned the Marks, Which it Does Not, as a Director of SHRI, Cole English Authorized and Acquiesced in Defendants' Use of the Marks

16   Cole English was a member of SHRI's Board of Directors between August 4, 2014 and

17   July 22, 2015. *See* Wise Dec. Exs. 36-37 (SHRI Board Minutes dated August 6, 2014 and July

18   22, 2015 email Bates-numbered STRAW004128-4129); Healy Dec. Ex. 44 (C. English Response

19   to RFA Set, No. 2) at Responses 7, 8. The TAC was filed on February 23, 2015, in the Contra

20   Costa County Superior Court. ECF No. 1-14. Cole English authorized the filing of the TAC

21   while he was both a director of SHRI and a managing member of SHIPH. *See* Healy Dec. Ex. 39

22   (C. English Depo. Tr.) at 93:21-95:1; Healy Dec. Ex. 40 (SHIPH Depo. Tr.) at 23:15-24:7, 25:1-5.

23   As a member of SHRI's Board of Directors, Cole English was one of the people charged

24   with managing the company. *See* Cal. Corp. Code § 300(a) ("the business and affairs of the

25   corporation shall be managed and all corporate powers shall be exercised by or under the

26   direction of the board."). SHRI's management, including its then president, Allen Strege,

27   reported to and took direction from the Board. Essentially, Cole English has sued Strege for acts

28   and decisions with respect to SHRI's operations, including with respect to the Marks, for which

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

DEFTS' MOT. PARTIAL SUMMARY JDMT TO
COUNTS 2, 3, & 7 OF PLTFS.' TAC; MEMO. OF
PTS. & AUTHS. - 3:15-CV-01382-LB

English was responsible.  *See* Strege Dec. ¶ 19 and Ex. 28; Wise Dec. ¶ 18.  Likewise, English has sued his fellow directors and shareholders, Listek and Wise, fellow shareholder, Morris, as well as former directors Eason and Rupp (*see id.* ¶¶ 4, 22), for infringing trademarks that English, in his role as a director, authorized SHRI to use.

### 5.  Eason and Rupp Cannot be Liable for Infringement Because they Closed Their Restaurants Before SHIPH Claims to Have Acquired the Marks

SHIPH claims that Eason and Rupp infringed the Marks, yet it is undisputed that both of them closed their restaurants in December 2011.  *See* Strege Dec. ¶ 22.  SHIPH was not formed until June 7, 2012 (*see* Healy Dec. Ex. 40 (SHIPH Depo. Tr.) at 14:2-4, 14:17-16:4; 16:19-18:16, and Ex. 86 thereto (SHIPH Articles of Organization), and purportedly acquired the Marks on June 8, 2012.  *See See, e.g.*, Healy Dec. Ex. 40 (SHIPH Depo. Tr.) at 44:5-46:22 and Ex. 91 thereto; and *id.* (SHIPH Depo. Tr.) at 56:21-59:12 and Exs. 93-96 thereto; and *id.* at 61:10-62:22, and Healy Dec. Ex. 42.  Eason and Rupp cannot be liable to SHIPH for infringement at a time when it did not exist and could not have owned the Marks.  Even if it owned the Marks — which it does not — "a trademark owner generally cannot sue for and recover damages for infringement that occurred prior to the owner acquiring the mark*." Ricks v. BMEzine.com, LLC,* 727 F. Supp. 2d 936, 957 (D. Nev. 2010); *H & J Foods, Inc. v. Reeder,* 477 F.2d 1053, 1056 (9th Cir.1973).

### C.  Plaintiffs Have Abandoned Their Requests to Inspect SHCC's and SHRI's Books and Records

The "Representative Plaintiffs" have asserted a cause of action against Strege, seeking an order permitting them to inspect SHCC's books and records under Cal. Corp. Code § 12606.  Cole English and Donna English seek a similar order against SHRI under Cal Corp. Code § 1603.

Representative Plaintiffs have abandoned their requests to inspect SHCC's records, and Cole English and Donna English likewise have abandoned their request to inspect SHRI's records.  *See, e.g.*, Healy Dec., Ex. 39 (Cole English Depo. Tr.) at 80:14-23:

Q:     During the course of your membership of the — in the Board of Directors of SHRI, did you ask to inspect the records of either SHCC or SHRI?

A:     No.

Q:     Did you understand that you had a right to do that as director?

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    A:      Yes.

2    Q:      And you voluntarily elected not to do that; true?

3    A:      True.

4    *See also id*. at 109:3-6.  Further, Cole English never asked Strege for records and was refused (*see*

5    *id*. at 108:3-5) (Q:  Did you ever ask for records from Allen Strege that he denied you access to?

6    A: No.).

7    Under California law "[e]very director shall have the absolute right at any reasonable time

8    to inspect and copy all books, records and documents of every kind and to inspect the physical

9    properties of the corporation of which such person is a director and also of its subsidiary

10   corporations, domestic or foreign."  Cal. Corp. Code § 1602.   Where Cole English — who had

11   unfettered access to SHRI's records while he was a member of SHRI's Board of Directors —

12   made no effort to obtain access to those documents, Plaintiffs cannot maintain their demands for

13   an inspection of that company's books and records.

14   Moreover, as Cole English testified, Strege never denied him access to any of SHCC's

15   books and records.  *See* Healy Dec., Ex. 39 (Cole English Depo. Tr.) at 80:14-23, 108:3-5.

16   Accordingly, Strege cannot be liable to the Representative Plaintiffs, represented by Cole English,

17   for refusing to permit an inspection of SHCC's records.  *See* Cal. Corp. Code § 12606.

18   Strege is therefore entitled to judgment against Plaintiffs' as to their second cause of

19   action, and SHRI is entitled to judgment against Plaintiffs as to their third cause of action.

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- 16 -

4833-2226-
7949.2

DEFTS' MOT. PARTIAL SUMMARY JDMT TO
COUNTS 2, 3, & 7 OF PLTFS.' TAC; MEMO. OF
PTS. & AUTHS. - 3:15-CV-01382-LB

1    **IV.    <u>CONCLUSION</u>**

2          For the foregoing reasons, all Defendants are entitled to judgment in their favor and

3    against SHIPH as to the Seventh Cause of Action.  Defendant Allen Strege is entitled to judgment

4    in his favor and against the "representative plaintiffs" as to the Second Cause of Action.  SHRI is

5    entitled to judgment in its favor and against the Englishes as to the Third Cause of Action.

6    Dated:  February 4, 2016                    Respectfully submitted,

7                                                ROPERS, MAJESKI, KOHN & BENTLEY

8                                                By: /s/ Todd A. Roberts

9                                                     TODD A. ROBERTS
                                                     ENRIQUE MARINEZ
10                                                   NICOLE S. HEALY
                                                     Attorneys for Defendant/Counter-Claimant
11                                                   STRAW HAT RESTAURANTS, INC.,
                                                     Counter-Claimant STRAW HAT
12                                                   COOPERATIVE CORPORATION, and
                                                     Defendants JEFFREY EASON, SAL LISTEK,
13                                                   DEBORAH MORRIS, CLARK RUPP,
                                                     RANDY WISE, AND ALLEN STREGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

DEFTS' MOT. PARTIAL SUMMARY JDMT TO
COUNTS 2, 3, & 7 OF PLTFS.' TAC; MEMO. OF
PTS. & AUTHS. - 3:15-CV-01382-LB